# United States Court of Appeals

## For the First Circuit

---

No. 09-1081

SOUTH BAY BOSTON MANAGEMENT, INC.,

Plaintiff, Appellant,

v.

UNITE HERE, LOCAL 26,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. Senior District Judge]

---

Before

Boudin, Gajarsa,* and Lipez, <u>Circuit Judges</u>.

---

    <u>Gregory C. Keating</u>, with whom <u>John D. Doran</u> and <u>Ronald S. Allen</u> were on brief, for Appellant.
    <u>Paul L. More</u>, with whom <u>Michael T. Anderson</u> was on brief, for Appellee.

---

November 12, 2009

---

    *    Of the Federal Circuit, sitting by designation.

**GAJARSA**, **Circuit Judge**.  South Bay Boston Management, Inc. ("South Bay"[2]) appeals from a final judgment of the United States District Court for the District of Massachusetts that was entered upon the district court's allowance of Unite Here, Local 26's ("the Union") motion to compel arbitration and denial of South Bay's petition for declaratory judgment.  Because we agree with the district court that the Union neutrality agreement at issue was not void ab initio and that the arbitration clause of the agreement remained in effect, we affirm.

## I.

In 2001 South Bay began the permitting process to develop a property in the City of Boston ("City").  It alleges that the Boston Redevelopment Agency ("BRA"), charged by the City with the oversight of the City's economic development, refused to issue the necessary permits until and unless it entered into a neutrality agreement with the Union.  South Bay and the Union executed a

---

[2]     As represented by South Bay in its Complaint, it is the successor management company to Jiten Hotel Management, Inc. and currently operates the Courtyard by Marriott Hotel located in South Boston, Massachusetts.  Complaint at 1 ¶2, South Bay Boston Mgmt., Inc. v. Unite Here, Local 26, No. 08-cv-11492-EFH (D. Mass. Aug. 29, 2008).  South Bay further represents that it became the successor management company on July 1, 2005.  Id. at 6 ¶22.  Jiten Hotel Management is not a party to this appeal.  On the record before us, it is unclear precisely what the relationship is between the two management companies.  It is undisputed, however, that South Bay has stepped into the shoes of Jiten Hotel Management and has assumed all rights and obligations relevant to this appeal.  Accordingly, all references in this opinion will be made to "South Bay," even when actions may initially have been taken by Jiten Hotel Management.

-3-

Memorandum of Agreement ("the Agreement") on August 20, 2003. The Agreement incorporated the terms and conditions required by the BRA. The necessary permits were issued immediately thereafter, and construction of a hotel on the property subsequently proceeded.

By the terms of the Agreement, South Bay was obligated to recognize the Union and to not object to the Union or speak out against it. The Agreement further provided that "[i]f the parties are unable to reach agreement on a collective bargaining agreement within 90 days after recognition . . . , all unresolved issues shall be submitted for final resolution to final and binding arbitration . . . ." The Agreement was structured to remain in force "until three years from the full public opening of the hotel, or if sooner upon execution of a collective bargaining agreement or issuance of an interest arbitration award which concludes the collective bargaining agreement negotiations, either of which explicitly supercedes this document." The hotel opened on May 18, 2005.

The Union requested recognition on October 19, 2007, asserting that it had obtained signed union authorization cards from a majority of the eligible employees of the hotel. South Bay, however, refused to recognize the Union on the ground that several employees were coerced into signing authorization cards. Additionally, South Bay terminated two employees who were on the Union's organizing committee.

Thereafter, South Bay requested arbitration pursuant to the Agreement. After a hearing, the arbitrator issued a decision on April 21, 2008, requiring South Bay to recognize the Union and to reinstate one of the two terminated employees. South Bay proceeded to recognize the Union on April 30, 2008, but refused to reinstate the terminated employee.

The Union filed suit in district court to enforce the arbitrator's decision. See Unite Here, Local 26 v. Jiten Hotel Mgmt., No. 1:08-cv-10739 (D. Mass. May 1, 2008). In its answer and counterclaims to the Union's complaint, South Bay admitted several facts relevant to the present dispute. In particular, it admitted that "the parties executed a Memorandum of Agreement," that "the parties are subject to contractual obligations under the Agreement," and that "the Agreement contains a provision related to the arbitration of disputes between the parties." Answer to Complaint at 2 ¶¶6-8, Unite Here, Local 26 v. Jiten Hotel Mgmt., No. 1:08-cv-10739 (D. Mass. May 27, 2008). In its counterclaim, South Bay further pled that the parties entered into the Agreement on August 20, 2003, that the Agreement "solely provided the procedure under which [South Bay] would voluntarily recognize the Union as the collective bargaining representative of its employees," and that the Agreement "provided that disputes over the Union's organization of the Hotel's employees would be submitted to arbitration." Id. at 4 ¶¶1-2.

As the district court proceedings continued, South Bay and the Union engaged in the collective bargaining process. The negotiations, however, deteriorated, and on July 23, 2008, the Union demanded arbitration.

South Bay filed the present action on August 29, 2008, in the United States District Court for the District of Massachusetts, seeking a declaratory judgment that they were not bound to arbitrate the collective bargaining dispute under the Agreement, because it was void ab initio and, even if it was binding on the parties, the Agreement had expired. The Union filed a cross-motion to compel arbitration.

The district court granted the Union's cross-motion; denied South Bay's petition; and ordered the parties to submit to arbitration. South Bay timely appealed to the First Circuit. We have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.[3]

## II.

On appeal, South Bay requests this court to consider two questions: first, whether the district court erred in determining as a matter of law that the Agreement was not void ab initio, in light of South Bay's allegations that the City had required it to

---

[3] An earlier motion to this court by South Bay to stay arbitration proceedings was denied. Arbitration has proceeded in parallel with this appeal. The parties' controversy remains active, as no arbitration decision has yet issued and the parties have not yet entered into a collective bargaining agreement.

-6-

enter into the Agreement in contravention of the National Labor Relations Act; and second, whether, assuming the Agreement was valid, the district court correctly determined as a matter of law that the arbitration clause remained in effect at the time arbitration was sought, in light of the fact that the collective bargaining process that resulted in the request for arbitration began prior to the expiration of the Agreement. We consider these issues in turn.

**A.**

South Bay argues that the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., preempts the neutrality agreement required by the City of Boston in order to obtain the necessary permits. We review district court determinations on issues of preemption de novo. See Carpenters Local Union No. 26 v. U.S. Fidelity & Guarantee Co., 215 F.3d 136, 139 (1st Cir. 2000). And we review issues of contract interpretation and enforceability de novo. See Coffin v. Bowater Inc., 501 F.3d 80, 97 (1st Cir. 2007).

The NLRA preempts state and local efforts to regulate labor-management relations. In Golden State Transit Corp. v. City of Los Angeles, the Supreme Court summarized the relevant rules of federal preemption of local actions in the following manner:

> The Court has articulated two distinct NLRA pre-emption principles. The first, the so-called Garmon pre-emption, prohibits States from regulating activity that the NLRA

-7-

protects, prohibits, or arguably protects or prohibits. The Garmon rule is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA.

[T]he second pre-emption principle, the so-called Machinists pre-emption . . . precludes state and municipal regulation concerning conduct that Congress intended to be unregulated. Although the labor-management relationship is structured by the NLRA, certain areas intentionally have been left to be controlled by the free play of economic forces. The Court recognized in Machinists that Congress has been rather specific when it has come to outlaw particular economic weapons, and that Congress' decision to prohibit certain forms of economic pressure while leaving others unregulated represents an intentional balance between the uncontrolled power of management and labor to further their respective interests. States are therefore prohibited from imposing additional restrictions on economic weapons of self-help, such as strikes or lockouts, unless such restrictions presumably were contemplated by Congress.

475 U.S. 608, 613–15 (1986) (internal quotation marks and citations omitted). The Court then applied the Machinists preemption principle to an informal regulation of the City of Los Angeles, under which the renewal of a taxicab franchise was predicated on the resolution of a labor dispute. The Court reasoned that "the city's insistence on a settlement is pre-empted if the city entered into the substantive aspects of the bargaining process to an extent Congress has not countenanced." Golden State, 475 U.S. at 615-16 (internal quotation marks and brackets omitted). Concluding that

-8-

"[F]ederal law intended to leave the employer and the union free to use their economic weapons against one another," the Court held "that a city cannot condition a franchise renewal in a way that intrudes into the collective-bargaining process." Id. at 619–20.

More recently, the Court applied the Machinists preemption principle to a set of California statutes that prohibited employers from using state funds "to assist, promote, or deter union organizing." Chamber of Commerce v. Brown, 128 S. Ct. 2408 (2008). The Court held that the statutes were preempted, "because they regulate within a zone protected and reserved for market freedom." Id. at 2412.

In this case, the district court determined: "The Hotel's argument for pre-emption fails. Pre-emption applies only to state regulations. The Hotel has not identified any state regulation and therefore has failed to allege what is necessary in order for the pre-emption doctrine to be operative." Memorandum and Order at 3 n.1, South Bay Boston Mgmt., Inc. v. Unite Here, Local 26, No. 08-cv-11492-EFH (D. Mass. Nov. 6, 2008) (citations omitted). This determination is erroneous. NLRA preemption applies equally to city as well as to state regulations. The form of regulation is irrelevant. See Golden State, 475 U.S. at 614 n.5 ("Our pre-emption analysis is not affected by the fact that we are reviewing a city's actions rather than those of a State. The fact that the city acted through franchise procedures rather than a

court order or a general law also is irrelevant to our analysis." (citation omitted)). Instead, the proper focus should be on whether the regulatory action conflicts with the efforts of the National Labor Relations Board or otherwise interferes with the unfettered ability of the parties to competitively establish their respective economic positions – if it controls or impedes the actions of the parties, it is pre-empted. In this case, South Bay clearly alleged that it was subjected to regulation by the City in the form of conditioning the issuance of permits on South Bay's execution of a neutrality agreement with the Union.[4] The district court's conclusion is, therefore, contrary to precedent.

In spite of this erroneous conclusion, the district court's decision may nonetheless be affirmed. See Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 51(1st Cir. 2006) ("We are not bound by the reasoning of the district court, and may affirm an order of dismissal on any basis made apparent by the record."). Specifically, South Bay does not dispute that the Agreement is not facially in conflict with the NLRA. Rather, it merely asserts that it entered into the Agreement involuntarily, pursuant to the City of Boston's alleged regulation. Therefore, we need not determine

---

[4]    There is no argument made here that the City was acting as proprietor, rather than regulator. Cf. Building & Construction Trade Council v. Associated Builders & Contractors, 507 U.S. 218, 226–28 (1993) (identifying a "distinction between government as regulator and government as proprietor" for purposes of preemption analysis).

whether the City's alleged regulation was preempted; we need only determine whether the Agreement, allegedly entered into under coercion, was void <u>ab initio</u> rather than voidable.  On this point, our decision in <u>In re Boston Shipyard Corp.</u>, 886 F.2d 451 (1st Cir. 1989), is instructive.  In that case, we explained: "It is well-settled . . . that a contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." <u>Id.</u> at 455 (internal quotation marks and brackets omitted); <u>see also</u> <u>Local Lodge No. 1424</u> v. <u>Nat'l Labor Relations Bd.</u>, 362 U.S. 411 (1960) (finding that a facially lawful union agreement is not void simply because it was entered into unlawfully).  Accordingly, the Agreement was not void <u>ab initio</u> — it was, at most, voidable.

That said, it is readily apparent that the time in which South Bay should have sought to challenge the Agreement has long since passed.  Its present challenge is untimely.  Per our decision in <u>Boston Shipyard</u>:

> If the coerced party does not contest within a reasonable time the document allegedly executed under duress, the contract or release may be ratified and affirmed.  A party may ratify an agreement entered into under duress in a number of different ways: first, by intentionally accepting benefits under the contract; second, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it; and third, by recognizing its validity by

-11-

> acting upon it, performing under it, or affirmatively acknowledging it.

886 F.2d at 455 (internal quotation marks, ellipses, and citations omitted). Here, seven years elapsed between when South Bay and the Union entered into the Agreement, and it is the first time South Bay contested the Agreement's validity. During that period, South Bay enjoyed the benefits of the Agreement, including the ability to invoke the same arbitration clause at issue in this case. And South Bay affirmatively acknowledged the Agreement both in arbitration and in the United States District Court for the District of Massachusetts. Because its challenge is not timely, South Bay has thus waived any right it may have had to void the Agreement. See id. at 455-56. Accordingly, the district court's decision not to declare the Agreement void must be affirmed.

This conclusion, we note, is consistent with traditional principles of res judicata. See Carteret Savings & Loan Ass'n v. Jackson, 812 F.2d 36, 38 (1st Cir. 1987) (explaining that res judicata applies to all claims that were brought or could have been brought in prior proceedings). South Bay does not contest that it could have raised the claim that the Agreement was void in the earlier district court litigation, when it challenged the April 2008 arbitrator's decision. It failed to do so, and it is now barred from doing so.

**B.**

We must next consider whether the Agreement's arbitration clause survived the Agreement's expiration in May 2008.  We review both the interpretation of arbitration agreements and orders compelling arbitration <u>de novo</u>.  <u>See</u> <u>Pelletier</u> v. <u>Yellow Transportation Inc.</u>, 549 F.3d 578, 580 (1st Cir. 2008); <u>see also</u> <u>PaineWebber Inc.</u> v. <u>Elahi</u>, 87 F.3d 589, 592 (1st Cir. 1996).

Addressing whether an arbitration clause survived an agreement in <u>Litton Financial Printing Division</u> v. <u>National Labor Relations Board</u>, the Supreme Court stated:

> The Agreement's unlimited arbitration clause, by which the parties agreed to arbitrate all "[d]ifferences that may arise between the parties" regarding the Agreement, violations thereof, or "the construction to be placed on any clause or clauses of the Agreement," places it within the precise rationale of <u>Nolde Brothers [Inc.</u> v. <u>Bakery Workers</u>, 430 U.S. 243 (1977)].  It follows that if a dispute arises under the contract here in question, it is subject to arbitration even in the postcontract period.

501 U.S. 190, 205 (1991).  And referring to its earlier holding in <u>Nolde Brothers</u>, the Court explained:

> We found strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract, and noted that the parties' failure to exclude from arbitrability contract disputes arising after termination affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship.  We found a presumption in favor of postexpiration arbitration of matters unless negated

-13-

> expressly or by clear implication, but that conclusion was limited by the vital qualification that arbitration was of matters and disputes arising out of the relation governed by contract.

Litton, 501 U.S. at 204 (internal quotation marks, ellipses, and citations omitted).

This circuit has since imposed a two prong analysis for post-expiration arbitrability of disputes: "we must determine if the particular dispute has its real source in the contract, and if so, we must consider whether postexpiration arbitration of the issue was negated expressly or by clear implication." United Parcel Service v. Union de Tronquistas, 426 F.3d 470, 473 (1st Cir. 2005)(quotation and citation omitted).

Here, both prongs are satisfied. First, the parties' dispute stems from their inability to arrive at a satisfactory collective bargaining agreement during the negotiations required by the Agreement. And second, the arbitration and expiration clauses specifically, and the Agreement generally, provide no reason to believe that post-expiration arbitration was negated. Indeed, the Agreement expressly contemplates that ninety days will pass after Union recognition before any collective bargaining disputes become arbitrable, without reference or regard to whether the Agreement might otherwise expire in the interim. The district court thus correctly determined that the arbitration clause remained in force

with respect to any dispute relating to the parties' initial round of collective bargaining and properly compelled arbitration.

### III.

Accordingly, the district court's order compelling arbitration and dismissing South Bay's petition for declaratory judgment is affirmed.

<u>Affirmed.</u>