**Francine I. KATZ, Respondent,**

v.

**ANHEUSER–BUSCH, INC., et al., Appellant.**

**No. ED 95493.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 14, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 26, 2011.

Application for Transfer Denied
Oct. 4, 2011.

Gerard T. Carmody, Kelley F. Farrell, Edwin C. Ernst, Carmody MacDonald P.C., St. Louis, MO, for Appellant.

John D. Lynn, Mary Anne Sedey, Sedey Harper, P.C., St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Anheuser–Busch, Inc. (A–B) appeals from the trial court's judgment denying its Motion to Dismiss, or in the Alternative, to Stay the Proceedings and Compel Arbitration in an employment discrimination suit filed by Francine Katz (Katz). A–B claims that the trial court erred in finding that two separate arbitration agreements are not enforceable against Katz, and further argues that an arbitrator, not the trial court, should have ruled on the arbitrability of the agreements. A–B also claims the trial court lacked jurisdiction to consider Katz's subsequent motion to stay arbitration proceedings, and erred in granting said motion. Finding no trial court error, we affirm.

### Background

Katz began her employment with A–B in the legal department in 1988. As Katz advanced throughout her career, she was promoted to Vice President of Corporate Communications and appointed to A–B's Strategy Committee in 2002. Katz was named Vice President of Communications and Consumer Affairs in 2004. Effective November 18, 2008, InBev S.A./N.V. (InBev) acquired A–B. Katz resigned her position effective December 31, 2008.

In October 2009, Katz filed a petition against A–B in the Circuit Court of the City of St. Louis alleging gender-based employment discrimination in violation of the Missouri Human Rights Act. In response to Katz's petition, A–B filed a Motion to Dismiss, or in the Alternative, to Stay the Proceedings and Compel Arbitration (Motion to Compel Arbitration). A–B initially claimed that Katz was required to arbitrate her claim against A–B under its Dispute Resolution Program (DRP) and later argued that A–B's Mutual Agreement to Arbitrate Claims (MAAC) also mandated arbitration of Katz's claim.[1]

### A. Arbitration Agreements

#### 1. *Dispute Resolution Program (DRP)*

A–B implemented the DRP in 1997. A revised program became effective on April 1, 2004, and applies to "all salaried and non-union hourly employees." The written policy contains the heading "SPECIAL NOTICE TO EMPLOYEES" and states that the policy is a binding agreement between the employee and A–B for the resolution of employment disputes. The DRP expressly states that:

> By continuing your employment with Anheuser–Busch Companies, Inc. or any of its subsidiary companies ("Company"), you and the Company are agreeing as a condition of your employment to submit all covered claims to the Anheuser–Busch Dispute Resolution Program ("DRP"), to waive all rights to a trial before a jury on such claims, and to accept an arbitrator's decision as the final, binding and exclusive determination of all covered claims. Employment discrimination and harassment claims based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, disability, or other characteristics protected by applicable laws, are covered by the agreement. Katz did

---

1. It is unclear from the record why A–B did not address allegations surrounding the MAAC until its reply memorandum, filed more than three months after its initial Motion to Compel Arbitration.

not sign any document agreeing to the terms of the DRP.

The DRP also contains a "delegation clause" which provides that the "Arbitrator shall have exclusive authority to resolve any dispute relating to the applicability, enforceability or formation of the DRP, including any claim that all or part of the DRP is invalid or unenforceable." A–B did not raise this clause or argue its effect in its Motion to Compel Arbitration, or in any other pleadings filed by A–B with said motion.

### 2. *Mutual Agreement to Arbitrate Claims (MAAC)*

Katz signed and entered into the MAAC with A–B on July 19, 2000. A–B avers Katz must arbitrate her claims not only under the DRP, but also pursuant to the express terms of the MAAC. Like the DRP, the MAAC provides for the arbitration of disputes between an employee and A–B "in order to establish and gain the benefits of a speedy, impartial, final and binding dispute-resolution procedure." The MAAC states that:

> [T]he Company and Employee hereby consent to the resolution by binding arbitration of all claims or controversies between them . . . arising out of Employee's employment by the Company (or its termination) . . . The claims covered by this Agreement include, but are not limited to, claims for . . . discrimination or harassment (including, but not limited to claims based on, race, color, sex, religion, national origin, age, marital status, or disability) . . .

The MAAC provides that the requirement to arbitrate will "survive the termination of [the employee's] employment" with A–B. However, a "change in control"

provision contained within the MAAC specifically notes the following:

> In the event of the occurrence of [a change in control] . . . the parties agree that this Agreement shall terminate and shall have no binding effect on either party as of the date of the [change in control].

The parties do not dispute that a "change in control" occurred when InBev acquired A–B on November 18, 2008.

The MAAC, like the DRP, also contains a "delegation clause," stating that,

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to this Agreement, including but not limited to any claim that all or part of this Agreement is void or voidable.

The MAAC further provides that,

> The arbitrator shall have the authority to resolve any dispute relating to the applicability or enforceability of this Agreement, to entertain a motion to dismiss and/or a motion for summary judgment and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

As with the DRP, A–B did not raise or argue the MAAC's delegation clause before the trial court in any pre-judgment motion or pleading.

### B. Trial Court Ruling

The parties completed briefing on A–B's Motion to Compel Arbitration in April 2010. The trial court conducted oral argument on the issues in May 2010, and issued its order denying A–B's Motion to Compel Arbitration on August 23, 2010.[2] The trial court found that by its own terms, the

---

2. On September 1, 2010, the trial court issued an order denominating the August 23, 2010 order a "judgment" for purposes of appeal.

MAAC terminated upon a "change in control" of the corporation, which occurred when In–Bev acquired A–B on November 18, 2008, and therefore, was no longer binding on Katz. The trial court rejected A–B's argument that *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), was dispositive with respect to the MAAC and that Katz's obligation to arbitrate continued despite the termination of the agreement. With regard to the DRP, the trial court found that under *Kunzie v. Jack–in–the–Box, Inc.*, 330 S.W.3d 476 (Mo.App. E.D. 2010), Katz's continued employment with A–B did not constitute an adequate acceptance by Katz of the terms of the DRP. The trial court further held that even if Katz were found to have accepted the terms of the DRP, the agreement nevertheless lacked legal consideration. The trial court found that Katz could not be compelled to arbitrate her claim under either the MAAC or DRP, and denied A–B's Motion to Compel Arbitration.

A–B filed its notice of appeal from that judgment to this Court in September 2010.

### C. Arbitration Proceedings

After A–B filed its notice of appeal, Katz commenced arbitration proceedings under the MAAC and DRP as a precautionary measure, but requested an immediate stay of any arbitration proceedings from the trial court. A–B opposed Katz's motion to stay the arbitration proceedings, arguing first that A–B's appeal to this Court from the trial court's denial of its Motion to Compel Arbitration divested the trial court of jurisdiction to hear Katz's motion to stay the arbitration proceedings. Second, A–B argued that following the Supreme Court's recent decision in *Rent–A–Center, West, Inc. v. Jackson*, —— U.S. ——, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), the decision to stay an arbitration proceeding rested not with the trial court, but exclusively with an arbitrator pursuant to the MAAC's delegation clause.

The trial court granted Katz's motion to stay the arbitration proceedings, citing Section 435.355.2, which grants the trial court power to stay arbitration proceedings. The trial court noted that an order staying the arbitration proceedings was necessary to preserve the status quo of the parties and that *Rent–A–Center* did not require the trial court to allow an arbitrator to determine whether an arbitration agreement existed between A–B and Katz.

A–B also filed a notice of appeal to this Court from that judgment. The appeals were thereafter consolidated. This appeal follows.

### Points on Appeal

A–B presents four points on appeal. In its first point, A–B avers that the trial court erred· in denying A–B's Motion to Compel Arbitration because the MAAC and DRP each contain delegation clauses granting an arbitrator the exclusive authority to determine whether a claim is arbitrable. A–B argues that the presence of such clauses precluded the trial court from ruling on the validity of the arbitration agreements and mandates enforcement of the arbitration agreements under the Federal Arbitration Act.

In its second point on appeal, A–B claims that even if the trial court was authorized to determine the arbitrability of the MAAC, the trial court erred in denying A–B's Motion to Compel Arbitration because Katz remained obligated to arbitrate her employment related claims against A–B even though the MAAC terminated upon the change in control. A–B posits that because a majority of the material facts relating to Katz's claims occurred before the MAAC termination, Katz remained obligated to arbitrate her claims under the MAAC.

In its third point, A–B argues that even assuming the trial court was authorized to decide the arbitrability of claims under the DRP, the trial court erred in denying A–B's Motion to Compel Arbitration because the DRP was a valid and enforceable contract. A–B contends that Katz accepted the terms of the DRP by her conduct, and that the DRP was supported by adequate consideration.

In its final point on appeal, A–B asserts that the trial court erred in granting Katz's motion to stay the arbitration proceedings because the trial court lost jurisdiction to consider such a motion after A–B filed its notice of appeal from the trial court's judgment denying its Motion to Compel Arbitration.

### Standard of Review

■■■ The question of whether a motion to compel arbitration should have been granted is one of law, and our review is de novo. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003); *Kunzie v. Jack–in–the–Box, Inc.*, 330 S.W.3d 476, 480 (Mo.App. E.D.2010). However, issues relating to the existence of an arbitration agreement are factual and require our deference to the trial court's findings. *Kunzie*, 330 S.W.3d at 480.

### Discussion

**A. Delegation Clauses of the MAAC and DRP**

■■ A–B first argues that the trial court was required to compel the parties to arbitrate because of the express delegation clauses found within both the MAAC and DRP. These clauses grant an arbitrator the exclusive authority to decide whether a claim is arbitrable. If valid, these delegation provisions effectively deprive the trial court of any authority to determine the arbitrability of the claims presented. We find no evidence in the record that A–B

raised this argument before the trial court prior to judgment.

Both the MAAC and DRP contain terms providing that any disputes relating to the agreements should be decided by an arbitrator rather than a court. On appeal, A–B asserts for the first time that these terms found within the MAAC and DRP deprived the trial court of any authority to determine the arbitrability of Katz's claim, and required that such decisions be made only by an arbitrator. A–B did not cite these terms to the trial court. Nor did A–B argue before the trial court that these terms provided for, or mandated, the arbitration of the arbitrability of the agreements. Because this claim was not presented to the trial court prior to its ruling, A–B has failed to preserve this issue for appellate review. Accordingly, we do not address the substantive point raised by A–B as it is precluded from raising this issue for the first time on appeal.

Our review of the record reveals the following. In response to Katz's petition alleging employment discrimination, A–B filed its Motion to Compel Arbitration. In that motion, A–B asked the trial court to dismiss Katz's action, or in the alternative, to compel binding arbitration pursuant to the DRP. A–B also filed a memorandum in support of its motion, in which A–B argued that the DRP was implemented in 1997, and was the exclusive method for resolving workplace disputes, including disputes involving alleged discriminatory conduct. A–B's pleadings are bereft of any reference to the delegation clause of the DRP, or argument that the delegation clause placed the authority to determine the arbitrability of the DRP exclusively with an arbitrator.

The pleadings and arguments raised by the parties relating to the DRP addressed issues of standing, offer and acceptance, consideration, and unconscionability. In

its reply to Katz's memorandum opposing its Motion to Compel Arbitration, A–B did not raise any issue relating to the delegation clause of the DRP or any alleged requirement that all disputes regarding arbitrability be addressed exclusively by an arbitrator. Instead, A–B's responsive pleadings focused on the issues of standing, offer and acceptance, consideration, and unconscionability. The record is clear that A–B argued the sufficiency of facts to support a finding that the DRP was an enforceable arbitration agreement between it and Katz. The record is equally clear that at no time prior to the trial court's judgment did A–B present any argument to the trial court that it was precluded by the delegation clause from considering whether the DRP was a binding agreement between the parties.

Similarly, A–B did not argue the applicability of the delegation clause contained within the MAAC prior to the trial court's judgment. Not until A–B filed its reply memorandum did it first suggest that the MAAC also required Katz to arbitrate her claims against A–B. Even then, A–B focused its argument on the MAAC's applicability, arguing that the agreement did not terminate with InBev's acquisition of A–B, but instead survived the change in control. At no time in its pre-judgment pleadings did A–B mention, much less argue, that the delegation clause of the MAAC, requires the arbitrability of Katz's claim to be determined by an arbitrator and not the trial court.

Only after the trial court denied A–B's Motion to Compel Arbitration and A–B filed its notice of appeal from that ruling did A–B first suggest the trial court lacked authority to consider the "gateway" issue of arbitrability due to the delegation clauses contained within the MAAC and DRP. A–B first argued the trial court's lack of authority to determine arbitrability in a memorandum opposing Katz's motion to stay arbitration proceedings filed on November 9, 2010. In its memorandum, A–B argued that the Supreme Court's June 16, 2010 decision in *Rent–A–Center,* —— U.S. ——, 130 S.Ct. 2772 (2010), upholding the validity of delegation terms similar to those found in the MAAC, required an arbitrator, and not the trial court, to determine whether to stay the arbitration proceedings.

A–B raises in this appeal legal arguments that may be relevant to addressing the potential limitation on the trial court's authority to determine the validity of the arbitration agreements. We are nevertheless guided by clear and persuasive Missouri case law that issues not presented to, or decided by, the trial court are not preserved for appellate review. *Smith v. Shaw,* 159 S.W.3d 830, 835 (Mo. banc 2005). By failing to plead or argue the issue of the delegation clauses before the trial court, A–B has waived this issue in its appeal. *Id.; see also Whitehill v. Whitehill,* 218 S.W.3d 579, 586 (Mo.App. S.D. 2007).

A–B asserts that the focal point of its argument on this issue is the Supreme Court's decision in *Rent–A–Center,* 130 S.Ct. 2772 (2010), which had not been decided at the time A–B filed and argued its Motion to Compel Arbitration. A–B suggests it be permitted now to raise the issue for the first time on appeal because *Rent–A–Center* had not been decided prior to its argument before the trial court.[3] We are not persuaded by A–B's argument.

---

**3.** The trial court heard oral arguments from the parties in May 2010, *Rent–A–Center* was decided on June 21, 2010, and the trial court issued its Order on August 23, 2010. A–B gave no reason why it could not have filed a motion for reconsideration or otherwise argued *Rent–A–Center* to the trial court before the trial court's judgment.

A–B's claim that the arbitrability of the DRP and MAAC must be decided by an arbitrator, and not the trial court, is an issue relating to the enforcement of the arbitration delegation clauses. That issue did not materialize for the first time in the annals of jurisprudence with the holding in *Rent–A–Center*. The Supreme Court's decision in *Rent–A–Center* did not fashion a legal argument previously unavailable to A–B, but instead clarified the law that preceded the decision. In holding that parties may agree to arbitrate "gateway" questions of arbitrability, the Court in *Rent–A–Center* observed that its analysis was a matter of contract law. 130 S.Ct. at 2777. The Supreme Court further noted that an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement. *Id.* A–B was not precluded from broaching this same issue before the trial court and preserving the issue for appeal. We limit our review to those issues raised before the trial court. *See Smith*, 159 S.W.3d at 835. A–B could have raised this issue in the same manner as did the parties in *Rent–A–Center*. Instead, A–B proceeded with its Motion to Compel Arbitration content to present the substantive issues of the motion to the trial court for its sole consideration and judgment. While the *Rent–A–Center* decision addresses issues potentially relevant to this appeal, A–B chose to argue the merits of Katz's challenges to the validity of the arbitration agreements. A–B did not maintain before the trial court that the delegation clauses prevented Katz from litigating her claims before it, or precluded it from entertaining her claims. A–B cannot now raise this issue for the first time on appeal. Point denied.

## B. MAAC

A–B's second point on appeal is premised upon its argument that Katz's obligation to arbitrate her claims under the MAAC survived the termination of the MAAC upon InBev's acquisition of A–B. A–B argues that even if the trial court was authorized to decide the MAAC's arbitrability (which A–B maintains it was not), the trial court nevertheless erred in failing to compel arbitration. A–B asserts that Katz remains obligated to arbitrate her claims because a majority of the material facts and occurrences relating to Katz's claims arose before the MAAC terminated. We are not persuaded that the parties' obligations under the MAAC survived the agreement's termination.

Section Eight of the MAAC contains a "change in control" provision that states as follows:

> In the event of the occurrence of [a change in control] ... the parties agree that this Agreement shall terminate and shall have no binding effect on either party as of the date of the [change in control].

Despite the clarity of the contractual provision, A–B argued to the trial court that Katz was limited to arbitration as the means for resolving her employment related claims. A–B argued that the termination of the MAAC upon InBev's acquisition of A–B did not relieve Katz of her obligation to arbitrate any claim arising prior to the termination of the agreement because the conduct of which Katz complained occurred while the MAAC was in force. A–B cited *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionary Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), as support for its argument.

In *Nolde Bros.,* an employer entered into a collective bargaining agreement granting severance pay upon the termination of employment of certain employees, and requiring binding arbitration of any grievance arising between the parties. *Id.* at 245–46. After the collective bargaining agreement expired, the employer

and the union did not agree to new terms, and the employer subsequently decided to permanently close its plant. *Id.* at 247. The union filed a lawsuit after the employer refused to provide severance pay required under the expired collective bargaining agreement. *Id.* The employer argued the union's claims were subject to arbitration under the terms of the expired collective bargaining agreement. *Id.* The Supreme Court held that the union's claim for severance pay was subject to resolution under the arbitration terms of the expired contract. *Id.* at 252. Specifically, the Supreme Court commented that the obligations under the arbitration clause of the collective bargaining agreement survived the contract termination because the dispute was over an obligation arguably created by the expired agreement. *Id.* The Court further noted that the arbitration clause did not expressly exclude disputes arising under the terms of the contract, but which stemmed from events occurring after the contract's termination. *Id.* at 252–53.

The trial court found that the MAAC, by its express terms, terminated upon the "change in control" when InBev acquired A–B on November 18, 2008. The trial court rejected A–B's analysis of *Nolde Bros.* and explained that other courts had interpreted *Nolde Bros.* as requiring a two-prong analysis when determining the arbitrability of disputes following the termination of an agreement containing an arbitration clause. Under such analysis, the trial court first must determine if a particular dispute has its source in the contract. *See S. Bay Boston Mgmt., Inc. v. Unite Here, Local 26,* 587 F.3d 35, 43 (1st Cir.2009). Second, the trial court then must consider whether the intent to arbitrate an issue following the termination of the contract was negated expressly or by clear implication by the agreement. *Id.* Finding that Katz's petition was based on employment discrimination in violation of the Missouri Human Rights Act, and did not arise from a breach of any provisions of the MAAC, the trial court found the holding in *Nolde Bros.* inapposite, and ruled that the MAAC did not obligate Katz to arbitrate her employment claims because the MAAC was no longer in effect when Katz filed her petition.

On appeal, A–B posits that, contrary to the trial court's opinion, Katz's obligation to arbitrate her employment claims against it survived the termination of the MAAC. A–B contends that because the alleged conduct of which Katz complains occurred during the time period the MAAC was in effect, Katz remains bound by the terms of the MAAC and must arbitrate her claims.

A–B correctly states the Supreme Court's holding in *Nolde Bros.,* that "in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." 430 U.S. at 253, 97 S.Ct. 1067. A–B relies significantly on this language to support its position that an arbitration provision in a contract is presumed to survive the contract's expiration unless there exists some express or implied evidence that the parties intended to negate this presumption. Upon a more complete analysis of the facts before us, we find A–B's reliance on *Nolde Bros.* and the cases that follow it, misguided.

Important to our analysis is A–B's failure to address the clear limitation expressed by the Supreme Court in *Nolde Bros.* In its holding, the Supreme Court stated that arbitration agreements are presumed to survive except "in the absence of some contrary indication," or when the presumption is "negated expressly or by clear implication." *Id.* at 253, 255. The record before us contains such express evidence.

Section Eight of the MAAC provides for termination of the agreement by stating that,

> In the event of the occurrence of [a change in control] . . . the parties agree that this Agreement shall terminate and shall have no binding effect on either party as of the date of the [change of control].

This language contains no limitation or caveat that could be reasonably interpreted to require the arbitration provision of the MAAC to survive the termination of the agreement. We further note that the entirety of the MAAC is an arbitration agreement, unlike the agreement in *Nolde Bros.*, in which an arbitration clause was but one provision in a much broader collective bargaining agreement. Where the sole subject matter of the MAAC is the parties' agreement to submit claims to arbitration, language providing that the agreement shall terminate and have no effect upon the occurrence of a specified event has but one reasonable interpretation. Unlike *Nolde Bros.*, we hold that the plain language of the MAAC clearly negates any presumption that the agreement to arbitrate was intended to survive a change in control in A–B.

■ Further evidence of the parties' intention is found within the MAAC. Section Seven of the MAAC provides that the agreement to arbitrate will "survive the termination of [the employee's] employment." This language is distinct from the "change in control" provision, and evidences the parties' intent to provide for certain specific circumstances under which the obligation to arbitrate would continue. While the parties expressly agreed that Katz's duty to arbitrate would survive her termination from A–B, the MAAC lacks any similar agreement that Katz's obligation to arbitrate survives the termination of the MAAC upon a change in control in A–B. Had the parties wished to provide for the survival of Katz's arbitration obligations under the MAAC upon a change in control, they could have done so. They did not. Thus, even though an arbitration provision in a contract may be presumed to survive the agreement's expiration, this presumption is overcome when, as here, the parties specifically expressed an intent to negate that presumption. *See Nolde Bros.*, 430 U.S. at 253, 255, 97 S.Ct. 1067.

■ "Arbitration is matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Kunzie*, 330 S.W.3d at 480, *quoting Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003). Here, Katz did not agree to arbitrate her claims against A–B if the MAAC terminated upon a change in control. The plain language of the MAAC makes this intent clear.

A–B's second point on appeal is denied.

## C. DRP

In its third point, A–B argues that even if the trial court was authorized to determine the DRP's arbitrability (which A–B maintains it was not), the trial court nevertheless erred in denying A–B's Motion to Compel Arbitration because the DRP was an enforceable agreement under which Katz is required to arbitrate her employment claims. A–B claims that Katz accepted the DRP through her conduct and that the DRP is supported by adequate consideration.

■ We first address the standard of review. As previously noted in this opinion, typically the question of whether a motion to compel arbitration should have been granted is one of law, and our review is *de novo*. We have applied this standard to the first two points on appeal. However, the Missouri Uniform Arbitration Ac-

tion (MUAA) authorizes trial courts to "proceed summarily" and conduct evidentiary hearings, if necessary, to resolve an issue of whether an arbitration agreement existed. *Kunzie*, 330 S.W.3d at 480. In this case, our review of the trial court's determination as to the existence of an agreement itself is analogous to that in a court tried case. *Id.* In such cases, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We apply the standard of review as stated in *Murphy v. Carron* to this point on appeal.

Neither party disputes that Katz did not sign the DRP. Katz rejects A–B's claims that the DRP requires Katz to submit her claims to arbitration. The record before us contains contradictory affidavits regarding Katz's knowledge of the DRP. A–B presented evidence that Katz was sent a cover letter with a copy of the DRP and that a copy of the DRP was hand delivered to her office. Katz submitted her own affidavit in which she swears that she does not recall seeing or reading any part of the DRP. The record contains evidence that Katz had knowledge of the existence of A–B's dispute resolution program, but was unaware of the claims covered by the program. Katz also provided evidence that she did not recall being informed that her continued employment with A–B constituted an acceptance of any agreement requiring her to submit any covered claims to the dispute resolution program.

The trial court found that the only evidence A–B offered of Katz's acceptance of the DRP was her continued employment with A–B following the distribution of the DRP. Noting this Court's recent decision in *Kunzie*, 330 S.W.3d 476 (Mo.App. E.D. 2010), the trial court deemed such evidence insufficient as a matter of law to establish an unequivocal acceptance of the DRP by Katz. The trial court further found that even had A–B presented evidence demonstrating Katz's acceptance of the DRP, that acceptance did not replace the need for legal consideration, which the trial court found lacking.

In a recent decision of this Court, we examined the enforceability of arbitration agreements, noting that:

> Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate. It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have *agreed* to arbitrate claims. Nothing precludes the possibility of an employer and its employee from entering into an enforceable agreement to arbitrate claims, so long as the agreement exhibits the essential elements Missouri requires of a valid contract. Such elements include offer, acceptance, and bargained for consideration. Thus, in the absence of a valid contract between the parties to arbitrate certain disputes, no action to compel arbitration will lie. (internal quotations and citations omitted)

*Kunzie*, 330 S.W.3d at 480–81.

■ A–B posits that the DRP is a valid contract meeting the requirements of offer, acceptance, and consideration. Our review of the record affirms the trial court's finding that the DRP lacked the necessary acceptance by Katz to form a binding agreement between the parties.

■ In Missouri, one of the essential elements of contract formation is a "mutuality of agreement." *Kunzie*, 330 S.W.3d at 483. A "mutual agreement" is reached when "the minds of the contracting parties [ ] meet upon and assent to the same thing

in the same sense at the same time." *Id.* at 483–84, *quoting Viacom Outdoor, Inc. v. Taouil*, 254 S.W.3d 234, 238 (Mo.App. E.D. 2008). "A meeting of the minds occurs when there is a definite offer and *unequivocal acceptance*." *Id.* at 484, *quoting Guidry v. Charter Communications, Inc.*, 269 S.W.3d 520, 528 (Mo.App. E.D.2008). As a general common law principle, for an acceptance to be effective it must be "positive and unambiguous." *Kunzie*, 330 S.W.3d at 484. However, silence generally cannot be translated into acceptance. *Id.* Accordingly, "the manifestation of an existing employee's unequivocal intention to be bound by an employer's proposed arbitration agreement as a new condition of employment necessitates more than the employee's mere continued work to satisfy Missouri's meeting of the minds requirement." *Id.* at 486.

A–B argues that evidence of Katz's acceptance of the DRP is not limited to Katz's continued employment, but is demonstrated through other conduct taken by Katz after A–B disseminated the DRP to employees. A–B asserts that Katz was aware of the DRP and her participation in matters related to the DRP evidenced her acceptance of the DRP as a condition of her continued employment. A–B cites two instances of "conduct" that it claims constitutes acceptance of the DRP by Katz.

In February 2005, A–B claims Katz was involved in drafting a letter responding to an inquiry received from a family member of an A–B employee regarding alleged mistreatment at work. A–B alleges Katz provided detailed instructions regarding the DRP process in the letter. Katz states that the letter in question was neither drafted nor signed by her, but was drafted by an attorney in A–B's legal department.

A–B next argues that in 2005, while a claim filed under the DRP by a fellow employee was pending, Katz regularly communicated with other employees regarding the status of the claim, including the employee's demand for arbitration. Katz suggests that A–B overstated her involvement in the process, maintaining instead that she was simply advised via email about an employee under her supervision who had commenced proceedings under the DRP. Katz claims that she never initiated emails or other communications regarding the employee's use of the DRP.

Katz asserts that evidence of these two separate incidents do not sufficiently establish that she possessed actual knowledge of the DRP, much less acceptance of its terms.

Given the record before us, we are unable to conclude that the trial court's judgment as it relates to the DRP is not supported by substantial evidence or is against the weight of the evidence. Neither do we find the trial court's declaration or application of the law to be erroneous. Accordingly, given our standard of review as stated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), we find no error in the trial court's judgment.

Substantial evidence exists that Katz had little more than a general knowledge of the existence of the DRP at A–B. Such evidence falls short of establishing Katz's knowledge of the details of any such program, or the applicability of such program to her employment. Without more, we will not reverse the trial court's finding that the evidence before it was insufficient to prove that Katz's conduct after A–B implemented the DRP constituted her manifest acceptance of the DRP. We are aware of no legal authority holding that an employee's general knowledge or awareness of the existence of a contract constitutes the "positive and unambiguous" "unequivocal acceptance" required under Missouri law. A–B asks this Court to rule that an employee's general knowledge of the existence of a policy, or communication with

co-workers about a policy, as a matter of law, constitutes acceptance of the policy. That, this Court will not do. Given the facts of this case, we find no error in the trial court's finding that Katz did not accept the terms of the DRP, and that the DRP was not a valid, binding contract as to Katz.

Because we hold the trial court did not err in finding no acceptance by Katz of the DRP, we do not consider the trial court's finding with regard to consideration.

■■■ A–B suggests that, at a minimum, we should remand this matter to the trial court with a directive to conduct an evidentiary hearing to determine if sufficient evidence exists to support A–B's argument that Katz accepted the DRP. Citing *Kunzie*, 330 S.W.3d 476 (Mo.App. E.D.2010), A–B claims that the trial court committed reversible error by not conducting an evidentiary hearing relating to the enforcement of the DRP. While we remanded the matters in *Kunzie* to the trial court for an evidentiary hearing, the facts of this case are distinguishable from *Kunzie*, 330 S.W.3d at 486. In *Kunzie*, the trial court's judgment stemmed from its conclusion that an employee's acceptance of the terms of an arbitration agreement could be based solely on the employee's continued employment as a matter of law. *Id.* at 482. Relying upon its understanding of the law at that time, the trial court intentionally did not consider any other evidence regarding the employee's acceptance of the policy, and relied solely upon its legal conclusion that the mere continuation of employment was sufficient to find acceptance under Missouri law. *Id.* at 485–86. Given the trial court's limited review in *Kunzie*, we held that without the ascertainment of additional facts, the trial court was unable to determine the intent of the parties regarding the arbitration agreement. *Id.* at 486. We are not presented with that scenario here.

While the trial court here may not have conducted a testimonial evidentiary hearing, the record clearly demonstrates that the parties extensively briefed the issues, submitted evidence in the form of sworn affidavits, and participated in oral argument. Unlike *Kunzie*, the trial court did not limit its consideration of Katz's acceptance of the DRP to the narrow legal issue of her continued employment with A–B, but instead entertained and allowed the submission of evidence relevant to this issue. Both parties submitted and argued the facts relating to the issue of acceptance that each felt were important. This circumstance contrasts significantly from that presented in *Kunzie*, where the employer maintained it possessed a "plethora" of evidence to support the employee's acceptance of the arbitration agreement, but did not present such evidence to the trial court because of the erroneous narrow scope of the trial court's legal ruling. 330 S.W.3d at 485. A–B does not allege it was limited in its submission of evidence by the trial court or that the trial court failed to consider any evidence that A–B presented. The proceedings conducted by the trial court, including extensive briefing, submission of sworn affidavits, and oral argument, fully satisfy the requirements of an evidentiary hearing as discussed in *Kunzie* and the requirements of the MUAA. *See Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 351–352 (Mo. banc 2006). The trial court examined the evidence presented by the parties, made specific factual determinations as to that evidence, and made appropriate rulings based on that evidence.

A–B's third point on appeal is denied.

### D. Motion to Stay Arbitration Proceedings

■■■ In its final point on appeal, A–B claims that the trial court erred in granting Katz's motion to stay the arbitration

proceedings because the trial court lost jurisdiction to consider the motion once A–B filed its notice of appeal from the trial court's denial of its Motion to Compel Arbitration. We disagree.

After the trial court issued its judgment denying A–B's Motion to Compel Arbitration, Katz initiated arbitration proceedings as a precautionary measure should A–B prevail on its appeal from the trial court's judgment. Katz then filed a motion to stay the arbitration proceedings with the trial court to preserve the status quo while A–B's appeal was pending. A–B opposed Katz's motion, arguing that the trial court lost jurisdiction to hear Katz's motion to stay immediately upon A–B's filing of its notice of appeal from the trial court's judgment. Notwithstanding the jurisdictional issue, A–B contended that the decision of whether to enter a stay rested exclusively with an arbitrator under the Supreme Court's decision in *Rent–A–Center*, — U.S. ——, 130 S.Ct. 2772 (2010). In granting Katz's motion, the trial court found that Section 435.355.2 granted authority to a court of proper jurisdiction to entertain an application to stay threatened or commenced arbitration, and that *Rent–A–Center* did not require the trial court to defer to an arbitrator on the issue of whether an arbitration agreement existed.

In Section 435.355.2, the Missouri legislature expressly granted authority to the trial courts to entertain an application to stay a commenced or threatened arbitration proceeding. Section 435.355.2 states that, "[o]n application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate." A–B rejects the applicability of this statute to this case arguing the trial court had no jurisdiction to consider Katz's motion once A–B filed its notice of appeal from the trial court's judgment denying its Motion to Compel Arbitration.

We recognize that generally a trial court loses almost all jurisdiction in a case upon the filing of a notice of appeal. *Foraker v. Foraker*, 133 S.W.3d 84, 92 (Mo.App. W.D.2004). However, we further recognize that, as with many rules, this rule is subject to certain exceptions. *Lardinois v. Lardinois*, 852 S.W.2d 872, 873 (Mo.App. E.D.1993). One recognized exception clarifies that a "trial court has continuing jurisdiction to perform certain ministerial acts involving the case so long as those acts do not affect the appeal." *Id.* A second exception recognizes that a trial court retains "continuing jurisdiction over a collateral matter for the preservation of the status quo of the parties." *Id.*

We hold that the circumstances of this case satisfy the requirements of this second exception. Staying the arbitration proceedings initiated by Katz as a precaution is both collateral to the denial of A–B's Motion to Compel Arbitration, and necessary for the preservation of the status quo of the parties. While A–B's appeal from the denial of its Motion to Compel Arbitration was pending before this Court, Katz commenced arbitration proceedings under both the DRP and MAAC to preserve any rights she may have under those agreements should this Court reverse the trial court's ruling. The trial court's subsequent stay of those proceedings simply preserved the status quo of the parties pending the outcome of A–B's appeal. The trial court's action was necessary to preserve the ultimate judgment in the case.

The trial court's judgment staying the arbitration proceedings was independent of A–B's Motion to Compel Arbitration and the trial court's judgment denying that motion. Further, the trial court's exercise of jurisdiction over the motion to stay did not affect the merit of A–B's appeal. A–B cites no judicial authority stripping the

trial court of jurisdiction over an entire case upon the filing of a notice of appeal when the appeal involves such independent elements as in this case. *See Lardinois,* 852 S.W.2d at 873. Although Katz's motion to stay the arbitration proceedings arose in the overall context of the arbitration dispute between her and A–B, the stay of the arbitration proceedings was distinct from A–B's Motion to Compel Arbitration and had no effect on the final judgment of the trial court. The trial court retained jurisdiction to hear and enter an order staying the arbitration proceedings because the trial court's decision did not interfere with the proceedings on appeal. *See id.; see also State ex rel. Steinmeyer v. Coburn,* 671 S.W.2d 366, 372 (Mo.App. W.D.1984) ("[Plaintiff's motion for leave to appeal in forma pauperis] and the court's ruling on it, although they could arise only in the context of the underlying action, were matters collateral to that action, quite separate from it and in no way affecting the final judgment of the trial court.").

A–B's fourth point on appeal is denied.

## Conclusion

Finding no error by the trial court in any of the points on appeal raised by A–B, we affirm the judgment of the trial court.

ROBERT G. DOWD, JR., J., and RUSSELL E. STEELE, SP. J., concur.