# United States Court of Appeals
## For the First Circuit

No. 04-2275

UNITED PARCEL SERVICE, INC.,

Plaintiff, Appellant,

v.

UNIÓN DE TRONQUISTAS DE PUERTO RICO, LOCAL 901,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, II, U.S. Senior District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Pedro J. Manzano-Yates, Carlos M. Aquino-Ramos, and Fiddler
González & Rodríguez, PSC on brief for appellant.
José E. Carreras Rovira on brief for appellee.

October 20, 2005

**COFFIN, <u>Senior Circuit Judge</u>.** Appellee Unión de Tronquistas de Puerto Rico, Local 901 (the union), represents a group of United Parcel Service (UPS) employees who claim that the company owes them back wages for unpaid vacation time. The unpaid vacation consists primarily of days that accrued under expired collective bargaining agreements. When the union submitted the claim to arbitration, UPS contended that the arbitrator could not adjudicate such "out-of-time" claims. The arbitrator concluded otherwise, ruling that the claims could proceed. The district court refused to vacate the arbitration award, relying on the well established principle of deference to arbitrators' rulings. On appeal, the company argues that the district court utilized the wrong standard of review and misapplied the law on survival of arbitration provisions. Although we find legal error in the court's approach, we conclude that it correctly left the dispute in the hands of the arbitrator. We therefore affirm its dismissal of the case.

## I. Background

UPS and the union have been parties to a series of collective bargaining agreements dating back to at least 1985, each of which included a comprehensive procedure for handling employee grievances and broadly provided for arbitration of disputes. The union submitted the grievance in this case to arbitration in March 1999, seeking compensation for accrued vacation time on behalf of dozens of employees. The employees assert that UPS in 1998 "erased"

-2-

vacation time they had accumulated before that year.  The collective bargaining agreement then in effect covered the period between August 1, 1997 and July 31, 2002.  Most, if not all, of the alleged vacation leave at issue had accrued, however, under prior collective bargaining agreements.  UPS's position is that the obligation to arbitrate the dispute over that vacation pay expired when the earlier agreements expired, and, indeed, the company appears to contend that the employees have retained no right at all to pursue claims arising from the earlier agreements.[1]

The arbitrator, however, ruled that she had the authority to order payment of any compensation determined to be owed.  In dismissing UPS's petition to vacate the arbitration award, the district court observed that it was obliged to enforce the award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Opinion and Order at 1 (internal citation omitted).  The court found no flaw in the arbitrator's award and accordingly entered judgment in the union's favor.

---

[1] It is unclear whether the disputed benefits derive solely from the collective bargaining agreement that immediately preceded the one in effect from 1997 to 2002 – i.e., the one covering 1993 to 1997 – or from multiple prior agreements.  Because it appears that the prior agreements all were substantially the same, and our analysis would be the same whether one or more prior agreements are involved, we presume for simplicity's sake that the disputed benefits all accrued under the 1993-97 agreement.

On appeal, UPS argues that the court made a pivotal error at the outset of its inquiry by implicitly deferring to the arbitrator on the threshold question of arbitrability. The company maintains that it was up to the court to decide in the first instance whether the arbitrator was empowered to decide the employees' vacation dispute, and it therefore asserts that the district court's first step should have been to consider that issue de novo.

UPS goes on to argue that, had the court properly assumed its authority to make the threshold arbitrability determination, it should have found the dispute non-arbitrable on the grounds asserted above – i.e., that the applicable arbitration provision expired along with the rest of the prior collective bargaining agreement and that the arbitrator had no authority under the current agreement to delve into the issue. In brief, UPS's argument is that the arbitrator lacked jurisdiction under any agreement to entertain the union's claim on behalf of the employees.

We agree with UPS that the district court should have made the initial decision on arbitrability. The district court apparently thought of this as a case requiring interpretation of the contract and therefore a matter for determination in the first instance by the arbitrator. But "[w]hether or not a company is bound to arbitrate . . . is a matter to be determined by the court," Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 208 (1991) (citing

AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643 (1986));[2] see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."). Such a duty must be performed even though it may require the court to interpret a bargaining agreement provision. See Litton, 501 U.S. at 209. Because we conclude, however, that the arbitrator does have authority to resolve the vacation pay dispute, the court's threshold error was harmless. We explain below the legal and factual foundation for that conclusion.

## II. Discussion

As we have noted, UPS maintains that the vacation pay dispute may not be arbitrated because there is no applicable arbitration provision: the one in the current collective bargaining agreement does not apply to benefits accrued before that agreement took effect, and the one that existed when the asserted benefits accrued has since expired. In our view, the case law is to the contrary.

In Litton, the Supreme Court confirmed that a presumption exists "in favor of postexpiration arbitration of matters unless 'negated expressly or by clear implication'" in the collective bargaining agreement. 501 U.S. at 204 (quoting Nolde Bros., Inc.

---

[2] An exception to that general principle exists when "'the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986)). No such statement of contrary intent is asserted here.

-5-

v. Bakery Workers, 430 U.S. 243, 255 (1977)).  The presumption is limited by a "vital qualification": the arbitration must concern "matters and disputes arising out of the relation governed by the contract."  Id.  A dispute "can be said to arise under the contract"

> only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

Id. at 205-06.  Our inquiry is thus two-pronged; we must determine if the particular dispute "has its real source in the contract," id. at 205, and if so, we must consider whether postexpiration arbitration of the issue was negated expressly or by clear implication.

UPS confusingly blends these two inquiries in its brief, and offers its argument on whether the disputed vacation time accrued under the prior agreement only in cursory fashion, embedded within its discussion of the arbitration clause's survivability. Nonetheless, viewing its effort generously, we consider UPS's implicit assertion that Article 34 of the 1993-97 collective bargaining agreement (titled "Vacation") resolves the first prong of the inquiry in its favor.  We focus, as did the parties, specifically on whether the dispute involves "a right that accrued

or vested under the agreement."[3]

Section 3 of Article 34 provides that "[e]arned vacation will be taken each year." The section goes on to state that "[o]nly one year earned vacation can be taken in each calendar year." UPS maintains that the combined force of the "clear and unequivocal language" in these two statements confirms that vacation time does not accrue from year to year and likewise could not accrue from one collective bargaining agreement to the next.

In our view, UPS overstates the reach of section 3. That vacations may be taken only in the year earned does not necessarily foreclose the employees from seeking compensation for unused, accrued vacation time. The idea of pay in lieu of vacation time is incorporated, in fact, in the 1997-2002 collective bargaining agreement, which allows employees to elect pay instead of time off for all days in excess of ten vacation days. See Article 34, Section 1©). The lack of an explicit paid vacation option in the earlier agreement does not negate its possible existence as a matter of practice; indeed, the provision in the later agreement may have been added to reflect just such a practice. We thus reject the notion that the limitation on when vacation time may be enjoyed leads inevitably to the conclusion that vacation time not taken as specified is lost entirely.

---

[3] The union asserts that UPS infringed that right in 1998, after expiration of the agreement under which the vacation days were earned, when it "erased" previously accrued leave.

The nature of earned vacation time, moreover, is materially different from the contractual right that the Supreme Court ruled did not vest or accrue in favor of the employees in <u>Litton</u>. At issue there was the right to seniority in the case of layoffs. The agreement specified that layoffs would be based on aptitude and ability, as well as seniority. The Supreme Court observed that aptitude and ability do not remain constant, but change over time, and that the layoff provision there consequently "cannot be said to create a right that vested or accrued during the term of the Agreement or a contractual obligation that carries over after expiration." <u>Litton</u>, 501 U.S. at 210.

Here, however, the right at issue is objectively quantifiable; the vacation benefit accrued according to a specified formula (one and five-twelfths days for each month in which the employee has worked at least eighty hours), and the total time earned by a given employee presumably may be ascertained through a check of company records revealing how much time was worked. Records also presumably would show how many vacation days already were taken. Vacation time strikes us as the classic example of a benefit that – barring explicit provision to the contrary – accrues during the term of the agreement under which it is earned. <u>Cf.</u> <u>Foster</u> v. <u>Dravo Corp.</u>, 420 U.S. 92, 99-100 (1975) (observing that the presence of a work requirement for vacation benefits generally is strong evidence that the benefits were "intended as a form of

shortterm compensation for work performed"). The measure of that benefit in days earned would remain constant over time, much like a deposit in a bank. We therefore conclude that <u>Litton</u>'s first prerequisite for post-expiration arbitrability is met here, namely that the dispute "has its real source in the contract."

Whether employees were entitled under the 1993-97 agreement to compensation in lieu of time off and whether such compensation could be claimed years after the vacation time was earned are, of course, separate matters. In deciding arbitrability, we are not called upon to finally resolve either of those merits-based questions. The answers lie between the lines of the collective bargaining agreement and involve precisely the sort of contractual dispute that the parties agreed to arbitrate. Our role with respect to the merits of the dispute is limited to determining whether the grievance – an allegation that employees were wrongfully deprived of earned vacation time – could be said to arise under the contract. Having concluded that the employees' right to vacation time accrued under the earlier agreement and, consequently, that the underlying dispute arises under that agreement, we must assign substantive resolution of the dispute to the arbitrator – unless the agreement negates the presumption of arbitrability expressly or by clear implication. We thus turn to that second prong of the inquiry.

UPS cites three contractual provisions to support its contention that the expired agreement negated by "clear implication" the post-expiration survival of the arbitration clause with respect to disputes over vacations. First, it invokes section 3 of Article 34 on vacations, the section we previously have discussed. Second, it points to a provision in the 1997-2002 agreement stating that any complaints or disputes the parties may have "with regard to the interpretation or administration of the present Agreement" will be resolved through specified procedures that culminate with arbitration, see Article 16, sections 1 & 2 of the 1997-2002 agreement (emphasis added), and it notes that both of the prior agreements had materially similar provisions. Finally, it refers us to a provision in the 1997-2002 agreement denying the arbitrator authority to "amend or modify this Agreement or establish new terms and conditions under this Agreement." See Article 16, section 4(a). UPS maintains that the latter two provisions reflect that an arbitrator may only resolve controversies that arise under the current agreement and may not modify the current agreement to cover untimely claims.

We find no evidence in these provisions – clear or otherwise – that the parties agreed to depart from the presumption that matters arising under a particular collective bargaining agreement will remain arbitrable even after the contract has terminated. Although the provision on vacation time is, as we have explained,

-10-

at the core of the dispute on the merits, it sheds no light on the threshold question of arbitrability. It simply does not address the procedures to be used in resolving conflicts over entitlement to vacation pay. The two remaining provisions are likewise inapplicable to our inquiry. Both refer to the arbitrator's authority under the agreement currently in effect, but they say nothing to negate the presumption that an arbitrator possesses continuing authority to resolve appropriate disputes arising from prior agreements.

Thus, because the vacation pay dispute arises under the agreement and because the agreement does not rebut the presumption of arbitrability, the merits of the union's claim must be arbitrated. Our reading of the arbitrator's decision indicates that this substantive review of the dispute has not yet occurred. In the decision that was the subject of UPS's appeal to the district court, the arbitrator described "the specific matter" before her as "determin[ing] our jurisdiction to formulate remedies regarding a salary claim which extends retroactively beyond the effectiveness of the Collective Bargaining Agreement." The award issued stated that "[w]e have jurisdiction to grant remedies for vacations earned prior to the effectiveness of the Collective Bargaining Agreement under which this Complaint is filed."

This ruling was faulty because, as we have explained, the arbitrator did not have authority to decide the issue of her

jurisdiction.  In turn, the district court improperly deferred to the arbitrator's determination on arbitrability.  The end result, however – that the merits of this case are to be handled by an arbitrator – was correct.  We therefore hold that the case was properly dismissed, and we presume that the parties will now return to arbitration to address the employees' specific entitlement to compensation for unpaid vacation time.

The judgment of the district court is affirmed.