

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2007

# Locals 45C 776C v. PPG Ind Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2275

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Locals 45C 776C v. PPG Ind Inc" (2007). *2007 Decisions.* Paper 941.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/941

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 06-2275, 06-2278 and 06-2491
_____

INTERNATIONAL CHEMICAL WORKERS
UNION COUNCIL OF THE UNITED FOOD AND
COMMERCIAL WORKERS UNION AND ITS LOCALS 45C AND 776C,
Appellant No. 06-2275

UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC, a labor organization,
Appellant No. 06-2278

LOCAL LODGE 470 OF DISTRICT 161
INTERNATIONAL ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS, AFL-CIO,
Appellant No. 06-2491

v.

PPG INDUSTRIES, INC.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 01-cv-01751, 01-cv-01601 and 01-cv-02110)
District Judge:  Honorable David S. Cercone
_____

Submitted Under Third Circuit LAR 34.1(a)
May 17, 2007

Before:  FISHER and ROTH, *Circuit Judges*, and RAMBO,* *District Judge*.

_____

*The Honorable Sylvia H. Rambo, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

(Filed: June 14, 2007 )

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

This appeal consists of three related cases against PPG Industries, Inc. ("PPG"). The Appellants, unions[1] that represent employees of PPG, challenge the District Court's grant of summary judgment in favor of PPG. For the reasons that follow, we will affirm.

I.

As we write only for the parties, who are familiar with the factual context and the procedural history of the case, we will set forth only those facts necessary to our analysis. In 2001, PPG sent a letter to thousands of its retired employees stating that it intended to reduce/modify retiree health benefits. The medical benefits had been negotiated under various, expired collective bargaining agreements ("CBAs") between the Appellants and PPG.[2] The Appellants filed grievances claiming that PPG could not modify/reduce retiree

_____

[1]The Appellants in No. 06-2275 are International Chemical Workers Union Council of the United Food and Commercial Workers Union, and its Locals 45C and 776C. The Appellant in No. 06-2278 is United Steelworkers of America, AFL-CIO-CLC. The Appellant in No. 06-2491 is Local Lodge 470 of District 161, International Association of Machinists and Aerospace Workers, AFL-CIO.

[2]The terms of the medical benefits programs are provided in a Group Insurance Plan or Group Benefits Plan ("GIP"). The parties agree that the GIPs are incorporated into the CBAs.

medical benefits, and sought arbitration under the terms of the CBAs.[3]  PPG refused to

process the grievances and to arbitrate.  The Appellants then filed suit in the District

Court under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

§ 185.  The complaints alleged that PPG violated the terms of expired CBAs.

The parties filed cross-motions for summary judgment on the issue of arbitration.

The unions claimed that PPG was obligated to arbitrate the issue of whether PPG could

modify/reduce retiree benefits.  PPG argued that it was necessary for the District Court to

determine whether the benefits had vested before it could determine the issue of

arbitrability.  According to PPG, the benefits were non-vested benefits granted under

expired CBAs and, thus, were not subject to arbitration.  The Appellants claimed there

was sufficient evidence of vesting to enable them to at least survive summary judgment.

The Magistrate Judge recommended that summary judgment be entered in favor of

PPG.  After the Appellants filed objections, the District Court adopted the Magistrate's

recommendations and entered summary judgment in favor of PPG.  It determined that the

medical benefits were not vested and that PPG was not required to arbitrate the

grievances.  This timely appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the District Court's

orders granting summary judgment *de novo*.  *See Kneipp v. Tedder*, 95 F.3d 1199, 1204

---

[3]All of the relevant CBAs included broad arbitration provisions.

(3d Cir. 1996). We apply the same standard employed by the District Court, and view the facts in the light most favorable to the Appellants. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir. 2006).

III.

The Appellants claim that the District Court erred by deciding whether the benefits were vested in order to determine whether the dispute was arbitrable. They argue that the District Court improperly reached the merits of the underlying claim, when it should have only decided the arbitration issue. Although the law in this area is somewhat unclear, we believe it was necessary for the District Court to consider whether the benefits vested in order to make the determination of whether the dispute was arbitrable.

It is clear that the expiration of a CBA does not automatically extinguish the parties' duty to arbitrate. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 251 (1977). Rather, the duty to arbitrate disputes that arise under the contract continues even after expiration of the CBA. *See id.* In *Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190 (1991), the Supreme Court explained that its holding in *Nolde* applied "only where a dispute has its real source in the contract." *Id.* at 205. A dispute regarding an expired CBA has its real source in the contract when "it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the

4

disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 205-06.

Whether arbitration is required and what issues are subject to arbitration are questions to be determined by the court, "and a party cannot be forced to arbitrate the arbitrability question." *Id.* at 208-09 (internal quotation marks and citations omitted). Although there is a presumption in favor of arbitration when a CBA contains a broad arbitration clause, the presumption should not be applied "wholesale in the context of an expired [CBA], for to do so would make limitless the contractual obligation to arbitrate." *Id.* at 209. When a court is asked to determine whether a duty to arbitrate exists, it "cannot avoid that duty because it requires [it] to interpret a provision of a [CBA]." *Id.*

We agree with our sister courts that have held that a court may need to decide the merits of the underlying claim in order to decide arbitrators' jurisdiction. *See Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993); *United Parcel Serv., Inc. v. Union de Tronquistas de Puerto Rico*, 426 F.3d 470, 473-74 (1st Cir. 2005); *Int'l Bhd. of Elec. Workers v. GKN Aerospace N. America, Inc.*, 431 F.3d 624, 628-29 (8th Cir. 2005).[4] However, there is some conflict between the courts as to whether a court

[4]We recognize that the Supreme Court's holding in *Litton* is at odds with its decision in *Nolde*, which suggested that a court should not address the merits of the underlying claim. *See, e.g.*, *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers' Int'l Union of America*, 28 F.3d 347, 353-54 (3d Cir. 1994). We did not need to resolve the tension in *Luden's*, but we expressed a reluctance to follow the decisions of other courts which treated *Litton* as impliedly overruling *Nolde*. *Id.* at 354. This case requires us to resolve the tension, and we choose to accept the duty

5

should actually rule on the merits of the underlying claim. The United States Court of Appeals for the Seventh Circuit stated that "[i]f the court must, to decide the arbitrability issue, rule on the merits, so be it." *Hyster*, 2 F.3d at 236. The United States Courts of Appeals for the First and Eighth Circuits, however, have held that a court should not decide the merits as long as it is possible that an arbitrator could reasonably determine that the dispute arose under the contract. *See U.P.S.*, 426 F.3d at 474; *GKN*, 431 F.3d at 628. It is unnecessary for us to weigh in on this question because as discussed below we do not believe that the retiree medical benefits provided under the CBAs could reasonably be interpreted to have vested. As the Appellants claim that this dispute is arbitrable based on the vesting of the retiree health benefits, it was proper for the District Court to consider whether the benefits vested.[5]

We now must consider whether the benefits vested or could possibly be interpreted to have vested. The interpretation of a CBA or plan document is a question of law. *See U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 138 (3d Cir. 1999). The Appellants "bear[]

_____

dictated by *Litton*. We must determine the question of arbitrability, even if that requires us to consider the underlying claim.

[5]We do not address the Appellants' claim that an implied-in-fact CBA existed in this case because they failed to raise that argument in their opening briefs. "An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court." *Laborers' Int'l Union of N. America v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (internal quotation marks and citations omitted). Because we do not consider the implied-in-fact CBA argument, we will deny the Appellee's motions to file sur-reply briefs to address this argument.

the burden of proving by a preponderance of the evidence, that the employer intended the welfare benefits to vest." *Id.* at 138-39 (internal quotation marks and citation omitted). Because an employer is not required to vest such benefits, a determination of vesting "is not to be inferred lightly and must be stated in clear and express language," and this principle applies regardless of the particular type of plan document at issue. *Id.* at 139 (internal citations omitted).

The Appellants claim that the plain language of the CBAs and the GIPs expressly provide vested retiree medical benefits. However, the language in the relevant documents in this case is quite similar to the language we examined in *Skinner*.[6] For example, some of the provisions state that PPG "will provide" retiree health benefits or that such benefits "may be continued" or "will continue." As in *Skinner*, "[i]t cannot be said that the phrases clearly and expressly indicate vesting." 188 F.3d at 141. Although some of the terms provide that coverage will be provided to the surviving spouse of a retiree until the spouse remarries or dies, this is not durational language that qualifies these terms. *Id.* (explaining that durational language such as "'will continue for the life of the retiree' or that the they 'shall remain unalterable for the life of the retiree'" would clearly and

---

[6]The parties made memorandums of agreement ("MOAs") after they negotiated terms, but before they entered into a CBA. At least one of the MOA's used language to suggest that the spouses of retirees were entitled to lifetime benefits. However, the MOAs were not incorporated into the CBAs. As the CBAs indicated that they were the final and complete agreement between the parties, the MOAs do not reflect the final intent of the parties. Therefore, the MOAs are not relevant to our analysis.

expressly indicate vesting). The CBAs all included termination provisions which provided that the terms of the CBA remained in effect until the expiration of the CBA. In *Skinner*, we explained that reading provisions related to retiree medical benefits in conjunction with termination provisions could suggest that the benefits only continued until the end of the CBA's term. *Id.*[7] It cannot be said that the language of the CBAs and the GIPs unambiguously vested the retiree health benefits.

The Appellants also claim that, even if the plain language is not clear, the relevant provisions of the CBAs and the GIPs create an ambiguity which precludes the granting of summary judgment. The determination of whether a CBA or other plan document provision is ambiguous is a question of law. *Id.* at 142. The Appellants contend, as did the appellants in *Skinner*, that phrases such as "will continue" or "shall provide" could be interpreted to mean that PPG would pay for health benefits for the lifetime of a retiree. *See id.* After considering the parties' arguments, we do not believe that this is a reasonable interpretation of the phrases when they are read in the appropriate contexts.

We also can consider extrinsic evidence in determining whether the CBAs and GIPs are ambiguous. *Id.* at 145. However, extrinsic evidence cannot be used to create

---

[7]The Appellee also claims that durational provisions it inserted into GIPs beginning in the 1980s are clear evidence that it did not intend for the benefits to vest. The Appellants claim that the provisions were unilaterally inserted, they protested the inclusion, and that the provisions are ineffective. It is unnecessary for us to resolve this argument as we believe that it is clear that the Appellants did not meet their burden of proving that the benefits vested without consideration of the durational provisions.

ambiguity. *Id.* In this case, the Appellants rely on the facts that PPG continued to provide insurance to retirees during strikes and letters PPG sent to retirees that explained the scope of health benefits as extrinsic evidence that the benefits vested.

Although this evidence could suggest an intent for the retiree benefits to vest, "extrinsic evidence should be carefully circumscribed." *Id.* at 146. There is no ambiguous contractual language, and we will not allow such evidence to create an ambiguity where none exists. The phrases regarding retiree health benefits in this case "are simply not susceptible to more than one reasonable interpretation, and they do not somehow render the CBAs incomplete or ambiguous." *Id.*

Viewing all reasonable inferences in favor of the Appellants, there is not sufficient evidence for the unions to survive summary judgment.[8] Therefore the District Court properly determined that the retiree benefits did not vest.

IV.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of PPG.

---

[8]We have fully considered all of the remaining arguments raised by the parties and find them to be without merit.

9