# United States Court of Appeals
## For the First Circuit

Nos. 17-2196, 18-1010

ROBIN BREDA,

Plaintiff, Appellant/Cross-Appellee,

v.

CELLCO PARTNERSHIP, d/b/a Verizon Wireless,

Defendant, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Torruella, Lipez, and Kayatta,
Circuit Judges.

Keith J. Keogh, with whom Keogh Law Ltd., Sergei Lemberg, and
Lemberg Law LLC were on brief, for appellant/cross-appellee.
David G. Thomas, with whom Emily H. Bryan and Greenberg
Traurig, LLP were on brief, for appellee/cross-appellant.

August 2, 2019

**LIPEZ**, **Circuit Judge**.    Robin Breda sued Verizon Wireless, claiming that its unauthorized, automated calls to her cellular telephone violated the Telephone Consumer Protection Act. After denying Verizon's motion to compel arbitration, the district court granted summary judgment for Verizon, concluding that Breda's claims failed because her telephone number was not "assigned to a . . . cellular telephone service" within the meaning of the relevant provision of the Act.  In granting summary judgment for Verizon, however, the district court did not consider the hybrid nature of Breda's telephone service with Republic Wireless and erroneously treated other facts as dispositive.  Contrary to the district court, we conclude that Breda's telephone number is "assigned to a . . . cellular telephone service" within the meaning of the Act.  Accordingly, although we affirm the district court's denial of Verizon's motion to compel arbitration, we reverse the district court's grant of summary judgment in Verizon's favor.

## I.

The Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, addresses the nuisance and invasion of privacy caused by automated or prerecorded telephone calls.  See Mims v. Arrow

Fin. Servs., LLC, 565 U.S. 368, 372 (2012) (summarizing congressional findings).[1] Among its provisions, the TCPA prohibits

> mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A)(iii).[2] Therefore, as relevant to this appeal, the elements of a TCPA claim are: (1) the defendant used an automatic dialing system or an artificial or prerecorded voice,[3]

---

[1] The TCPA also applies to other forms of communication, such as text messages. See Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 667 (2016). For simplicity, we refer to "telephone calls" throughout this opinion when discussing the TCPA. Calls to "residential telephone lines" are subject to different requirements not at issue in this case. See 47 U.S.C. § 227(b)(1)(B).

[2] The TCPA targets both "telemarketing" calls, see Mims, 565 U.S. at 372, and non-governmental debt-collection calls, Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1254-55 (11th Cir. 2014); Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 273 (3d Cir. 2013).

[3] Although the TCPA defines "automatic telephone dialing system," 47 U.S.C. § 227(a)(1), that definition has been subject to ongoing and sometimes conflicting interpretations by the Federal Communications Commission and the courts. See Maes v. Charter Commc'n, 345 F. Supp. 3d 1064, 1066-70 (W.D. Wis. 2018)(describing these conflicts). However, because the use of an automatic dialing system is not a contested issue on appeal, it suffices for present purposes to think of an automatic dialing system as a piece of equipment exhibiting "the capacity to dial numbers without human intervention." Id. at 1067.

(2) to call a telephone number assigned to a cellular telephone service <u>or</u> to a service for which the called party is charged for the call. See <u>Levy</u> v. <u>Receivables Performance Mgmt., LLC</u>, 972 F. Supp. 2d 409, 417 (E.D.N.Y. 2013).[4] That is, if the plaintiff's telephone number is assigned to a cellular service, she does not have to also prove that she was charged for incoming calls. See <u>Susinno</u> v. <u>Work Out World Inc.</u>, 862 F.3d 346, 349 (3d Cir. 2017). The TCPA is a strict liability statute, <u>see</u> <u>Alea London Ltd.</u> v. <u>Am. Home Servs., Inc.</u>, 638 F.3d 768, 776 (11th Cir. 2011), but

---

[4] Several courts, including the district court in this case, have included as an element of a TCPA claim under § 227(b)(1)(A)(iii) that the call was made without the recipient's prior consent. See <u>Breda</u> v. <u>Cellco P'Ship</u>, No. 16-11512-DJC, 2017 WL 5586661, at *3 (D. Mass. Nov. 17, 2017) (citing <u>Karle</u> v. <u>Sw. Credit Sys.</u>, No. 14-30058-MGM, 2015 WL 5025449, at *6 (D. Mass. June 22, 2015)); <u>Jones</u> v. <u>FMA All. Ltd.</u>, 978 F. Supp. 2d 84, 86 (D. Mass. 2013); <u>see</u> <u>also</u> <u>Meyer</u> v. <u>Portfolio Recovery Assocs., LLC</u>, 707 F.3d 1036, 1043 (9th Cir. 2012). However, addressing the elements of a TCPA claim under § 227(b)(1)(A)(iii) for the first time, we understand consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim. See <u>In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 23 FCC Rcd. 559, ¶ 10 (2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent."); <u>Van Patten</u> v. <u>Vertical Fitness Grp., LLC</u>, 847 F.3d 1037, 1044 n.3 (9th Cir. 2017) ("We think it plain from the statutory language that prior express consent is an affirmative defense, not an element of a TCPA claim . . . ."). Because consent is not an issue on appeal, our understanding that consent is an affirmative defense does not affect our analysis.

provides for treble damages in the case of "willful[] or knowing[]" violations, 47 U.S.C. § 227(b)(3).

## II.

The following facts are undisputed, unless otherwise noted. Breda opened an account with Verizon Wireless ("VZW") for cellular telephone service in 2003. VZW provided her with both a telephone number and a telephone plan pursuant to a Customer Agreement. The Agreement provides, in relevant part:

> You and Verizon Wireless both agree to resolve disputes only by arbitration or in smalls claims court . . . . We also both agree that . . . the Federal Arbitration Act applies to this agreement. Except for small claims court cases that qualify, any dispute that in any way relates to or arises out of this agreement or from any equipment, products and services you receive from us . . . will be resolved by [arbitration].

The Agreement also states that VZW treats the customer's request to transfer the covered telephone number to another provider "as though you asked us to cancel your Service for that number."

Breda was a VZW customer until 2015, when she switched her telephone service to a "Wi-Fi + Cell Talk + Text Service Plan" with Republic Wireless ("Republic"). Republic does not have direct access to telephone numbers and must obtain them from, or "port" them to, an entity authorized to provide numbers by the relevant

regulatory authorities.[5]   Therefore, Republic "ported" Breda's telephone number to Bandwidth.com, Inc. ("Bandwidth"), a third party with authority to "provide" telephone numbers.   Bandwidth only has authority to provide "wireline" numbers, and Breda's telephone number was listed by Bandwidth as a "wireline," rather than "wireless,"[6] number on Neustar, a "neutral provider of real-time information and analytics to the Internet, communications, . . . and marketing industries." Neu[s]tar, Inc., SEC Form 10-K (FY 2011), https://www.sec.gov/Archives/edgar/data/1265888/0001193125120881 86/d233580d10k.htm (last visited July 31, 2019).[7]

Republic provides telephone service to its customers using a system that "prefers" Voice over Internet Protocol ("VoIP")

---

[5] "Porting" is the process by which an existing phone number is transferred from one service provider to another when a customer switches her telephone service. Porting: Keeping Your Phone Number When You Change Providers, https://www.fcc.gov/consumers/guides/porting-keeping-your-phone-number-when-you-change-providers (last visited July 31, 2019).

[6] Although the record does not fully illuminate this point, we follow the parties in assuming that "wireline" and "wireless" are the two possible designations for a telephone number on Neustar, and that "wireless" is a designation encompassing cellular service but not other services, such as those described below, that use wireless internet.

[7] Until 2016, Neustar was the Local Number Portability Administrator for the United States, responsible for overseeing telephone number porting and number portability databases. See Neustar, Inc. v. FCC, 857 F.3d 886, 889-91 (D.C. Cir. 2017).

technology for the transmission of calls.[8]  When a call is made to Breda's telephone number, it is first received by Republic's servers.   Republic determines whether Breda's smartphone is connected to wireless internet ("Wi-Fi").   If it is, Republic routes the call using VoIP technology through Bandwidth, which provides VoIP service for Republic's customers.  If Breda's phone is not connected to Wi-Fi, Republic passes the call off to a third-party cellular service provider (either Sprint or T-Mobile), which routes the call to Breda's phone using its cellular network.  Breda ordinarily turns off the Wi-Fi function on her phone when she leaves her house in the morning and turns it back on when she returns home at night.  That is, if Breda remembers to turn off the Wi-Fi function, she only receives calls through a cellular

---

[8] VoIP "is a technology that allows [a caller] to make voice calls using a broadband Internet connection instead of a regular (or analog) phone line. . . . VoIP services convert [a] voice into a digital signal that travels over the Internet. . . . [W]ireless 'hot spots' in locations such as airports, parks, and cafes allow [a caller] to connect to the Internet and may enable [the caller] to use VoIP service wirelessly." Voice Over Internet Protocol (VoIP), https://www.fcc.gov/general/voice-over-internet-protocol-voip (last visited July 31, 2019).  VoIP technology "can be used with either a telephone (mobile or land-line) or a PC [personal computer] as the user terminal. This [functionality] gives different modes of operation: PC to PC, PC to telephone, telephone to PC and telephone to telephone or mobile-to-mobile, all via the internet."   Rebecca  Wong,  Daniel  B.  Garrie  &  Gerald  S. Levine, Voice-Over Internet Protocol – The Continuing Difficulties in Neutrality and Privacy, 4 J. Legal Tech. Risk Mgmt. 41, 43 (2009).

network when she is away from home.  Breda pays a set monthly fee for her telephone service, which includes unlimited calling. Incoming calls do not reduce the number of minutes available to her under her plan.

At some point after switching to Republic, Breda began receiving automated calls from VZW that included a prerecorded voice prompt announcing the calls were intended for an unrelated person.  When prompted, Breda pressed a button to indicate she was not the intended recipient.  Breda also spoke to a live VZW representative, informed that person that she was receiving the calls in error, asked that the calls stop, and was told they would. However, the calls continued for a period of time.[9]  Republic's records confirm that several of VZW's calls were transmitted to Breda's phone through a cellular network.

---

[9] According to VZW, pushing the button to indicate that she was not the intended call recipient would merely have transferred Breda to a representative.  Breda testified that she pushed the button multiple times but may have never waited to be connected to a representative.  She was also unsure if she had reached the representative she did talk to by pushing the button or by calling VZW directly.  VZW asserts that it called Breda because it was trying to reach a delinquent VZW account holder who had erroneously provided Breda's number as an alternate contact.  VZW also asserts that the representative Breda spoke with failed to immediately stop the calls due to inadvertence.

Based on these automated calls, Breda filed a class action complaint alleging violations of the TCPA.[10] VZW raised arbitrability as an affirmative defense. However, in the subsequently filed joint case management report, the parties agreed that the matter "presently is not suitable for alternative dispute resolution." There was no dispute that Breda was no longer a VZW customer at the time she received the calls underlying her TCPA claims.

After VZW moved for summary judgment, Breda filed a response in opposition in which she stated, inter alia:

- "The number at issue is assigned to cellular service; Ms. Breda obtained the telephone number from a cellular service plan with Verizon Wireless before she switched providers to Republic Wireless. At that time, she used her same cellular telephone number to make and receive calls. When Ms. Breda signed up for Republic Wireless, she kept the same cellular telephone number that Verizon assigned to her. She continues to use that same cellular telephone number to make and receive calls on her [smartphone]." Pl.'s Opp'n to Summ. J., Dkt. # 66, at 2-3 (citations omitted).

- That a particular ruling by the Federal Communications Commission ("FCC") "supports [her] position that her cellular telephone number initially assigned to her by Verizon as part of her Verizon

[10] The class action complaint was substituted for Breda's original complaint bringing claims solely on her own behalf. Because the district court fully resolved Breda's personal claims before she filed a motion for class certification, any class claims were mooted by the judgment for VZW. See Bais Yaakov of Spring Valley v. ACT, Inc., 798 F.3d 46, 50-51 (1st Cir. 2015).

- 9 -

cellular service is assigned to a cellular service."
Id. at 12.

VZW then filed a motion to compel arbitration and dismiss or stay the case, contending that Breda's claims were now subject to the Agreement's arbitration clause because she had, in her response in opposition to summary judgment, linked her claims with the services provided under that Agreement.

The district court denied VZW's motion to compel arbitration but granted its motion for summary judgment. Breda timely appealed the grant of summary judgment, and VZW timely cross-appealed the denial of its motion to compel.[11]

### III.

VZW contends that Breda's claims are subject to the Agreement's arbitration provision. We review the denial of a motion to compel arbitration de novo. Conduragis v. Prospect Chartercare, LLC, 909 F.3d 516, 517 (1st Cir. 2018). Although the party seeking to compel arbitration has the burden of demonstrating that a particular claim comes within the scope of an arbitration

---

[11] After oral argument, we invited the FCC to file an amicus brief "addressing the meaning of: (1) 'telephone number assigned to' and (2) 'cellular telephone service' as used in . . . 47 U.S.C. § 227(b)(1)(A)(iii)." Order (Feb. 4, 2019). The FCC declined our invitation, stating, "[b]ecause the full Commission has not previously addressed the specific factual scenario presented by these cross-appeals, the Commission's lawyers are unable at this time to take a position on the issues presented here." FCC Letter (Mar. 6, 2019).

agreement, Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011), we generally resolve ambiguities in favor of arbitration, which is consistent with federal policy, Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014).

Claims arising after the expiration of a contract containing an arbitration provision, however, are only presumed to be subject to arbitration if the "dispute has its real source in the contract."  Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 205 (1991).  A dispute has its real source in an expired contract "only where" the dispute

> involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

United Parcel Serv., Inc. v. Unión de Tronquistas de P.R., Local 901, 426 F.3d 470, 472-73 (1st Cir. 2005) (quoting Litton, 501 U.S. at 206).  If the dispute has its real source in the contract, a court "must consider whether postexpiration arbitration of the issue was negated expressly or by clear implication."  Id. at 473.

We readily conclude that Breda's TCPA claims do not have their real source in her expired Agreement with VZW.[12] All of the material facts underlying her claims -- that is, all of the facts and occurrences relating to VZW's automated calls -- occurred after the Agreement's termination. See, e.g., Stevens-Bratton v. TruGreen, Inc., 675 Fed. App'x 563, 568-69 (6th Cir. 2017)(finding no presumption of arbitrability where plaintiff based her TCPA claims on calls that occurred after the agreement expired). Indeed, Breda's TCPA claims are entirely unrelated to the parties' prior relationship as memorialized in the Agreement, that of customer and telephone service provider. VZW contends it called Breda because a current VZW customer unknown to Breda erroneously provided her number as an alternate contact. In other words, what happened to Breda could have happened to anyone.

Nor do Breda's statutory TCPA claims involve a contractual right or a right that accrued or vested under the Agreement. See, e.g., Rahmany v. T-Mobile USA Inc., 717 Fed. App'x 752, 753 (9th Cir. 2018) (Mem.) ("The TCPA, not the Wireless Agreement, creates and defines any alleged duty to refrain from sending an unwanted text message."); Gamble v. New Eng. Auto Fin., Inc., 735 Fed. App'x

_____

[12] VZW does not appear to challenge the district court's conclusion that the Agreement was terminated by its own terms when Breda switched her service to Republic.

- 12 -

664, 666 (11th Cir. 2018) (noting that plaintiff's TCPA claim "arises not from the Loan Agreement or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law");[13] see also Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218 (11th Cir. 2011) ("The term 'arising out of' [in standard arbitration provisions] is broad, but it is not all encompassing. . . . [It] requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract."). We therefore conclude that Breda's claims are not subject to a presumption in favor of arbitrability.[14]

Absent the presumption, VZW does not provide any good reason to compel arbitration. VZW candidly admits that nothing in Breda's complaint indicates that her claims are subject to the Agreement's arbitration provision. But it suggests that the usual post-expiration analysis should not apply because of Breda's statements in her opposition to summary judgment. Specifically, VZW asserts

_____

[13] VZW distinguishes Rahmany and Gamble on the basis that Breda, unlike the plaintiffs in those cases, "inexorably linked the agreement" to her claims. As we explain below, we reject this characterization.

[14] VZW's reliance on Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985), is misplaced because that case is factually inapposite. Besides the fact that the agreement in that case had not expired, the connection between the suit and the agreement was clear -- both the claims and counterclaims expressly required interpretation of the parties' agreement containing the arbitration clause. Id. at 621-22 & n.9, 624 & n.13.

- 13 -

that, in support of her main argument that her number is "assigned to a . . . cellular telephone service," Breda "relied heavily on th[e] fact that she obtained [her] Telephone Number from VZW and did so as part of her VZW cellular services."  In other words, VZW contends that Breda chose "to inexorably link the products and services she obtained from VZW to her TCPA claim[s] when attempting to avoid summary judgment," that she must be bound to the consequences of her choice, and that those consequences include arbitration of her claims pursuant to the Agreement.  VZW further contends that this concept of compelling arbitration based on how a party frames its arguments in opposition to summary judgment is a matter of first impression in this Circuit.  We need not make new law, however, because we disagree with the factual premise underlying VZW's argument.

We recognize that a few of Breda's statements in her opposition to summary judgment could be read in isolation as essentially arguing that her number was assigned to a cellular telephone service at the time of VZW's calls because she had the same number when she was a customer of VZW's cellular telephone service.  But, read in context, it is clear that Breda has never made this argument.  To the contrary, she has consistently argued that her telephone number is assigned to a cellular telephone

service because of the nature of her service with Republic.[15]  We see no reason to compel the arbitration of claims entirely unrelated to the Agreement merely because Breda made some stray references to her prior relationship with VZW in opposing summary judgment.  For these reasons, the district court correctly denied VZW's motion to compel, and we reject its cross-appeal.[16]

## IV.

Breda contends that the district court erred in granting summary judgment for VZW on her TCPA claims.  We review the district court's grant of summary judgment de novo, asking whether the moving party -- here, VZW -- has demonstrated "that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law."  Barry v. Moran, 661 F.3d 696, 702-03

---

[15] For example, in the introduction to her response in opposition to VZW's motion for summary judgment, Breda stated her argument as follows:

> Undisputed facts show that [she] received Verizon's calls on her cellular Smartphone.  She pays for her cellular telephone service for that wireless Smartphone via Republic Wireless' "Wi-Fi + Cell Talk + Text plan."  Moreover, Verizon's robocalls were actually transmitted to her cellular Smartphone through either Sprint or T-Mobile's cellular network as part of her Republic Wireless service.

Pl.'s Opp'n to Summ. J., Dkt. # 66, at 2 (emphasis in original).

[16] Because we determine that the motion to compel was properly denied, we do not address Breda's argument that VZW should be estopped from compelling arbitration.

- 15 -

(1st Cir. 2011) (citing Fed. R. Civ. P. 56(a)).  The district court concluded that Breda's TCPA claims fail as a matter of law because her telephone number is not "assigned to a . . . cellular telephone service" and she, undisputedly, is not charged for each incoming call.  Specifically, regarding whether her number is "assigned to a . . . cellular telephone service," the district court determined that Breda "was receiving VoIP services rather than traditional cellular telephone services," and stated, "[t]he survival of her claims, therefore, turns on whether VoIP service may be considered cellular telephone service as a matter of law." Breda v. Cellco P'Ship, No. 16-11512-DJC, 2017 WL 5586661, at *3 (D. Mass. Nov. 17, 2017).  The district court then concluded, as a matter of law, that "VoIP telephone service" is not "cellular telephone service" within the meaning of the TCPA.  Id. at *4.  In reaching this conclusion, the district court cited cases in which courts determined or suggested that telephone service exclusively using VoIP technology is distinct from "cellular telephone service" and triggers TCPA liability only if the called party is charged for incoming calls.  See, e.g., Jones v. Experian Info. Sols., No. 14-10218-GAO, 2016 WL 3945094, at *6-7 (D. Mass. July 19, 2016); Karle v. Sw. Credit Sys., No. 14-30058-MGM, 2015 WL 5025449, at *6 (D. Mass. June 22, 2015); Lynn v. Monarch Recovery

Mgmt., Inc., 953 F. Supp. 2d 612, 616-17 (D. Md. 2013), aff'd, 586 Fed. App'x 103 (4th Cir. 2014).

In determining that Breda's telephone service is "VoIP service," however, the district court did not consider the hybrid nature of Breda's service. It is undisputed that Breda's Republic telephone service involves a cellular component -- calls to her telephone number can be, and are, routed over cellular networks. Therefore, the question before us is not whether "VoIP service" is "cellular telephone service" under § 227(b)(1)(A)(iii), but rather, whether a hybrid service with both cellular and VoIP components can be so considered. In answering this question, we do not have guidance from the FCC, see supra note 11, and the parties have not pointed us to any circuit court decisions directly addressing a service like Breda's. But, as we explain, using the information and guidance we do have available, we conclude that Breda's hybrid service is meaningfully distinguishable from exclusive VoIP service and constitutes "cellular telephone service" within the meaning of the TCPA.

## A. "Cellular Telephone Service"

As we understand the parties' positions, if not for the VoIP component of her telephone service, the parties would agree that Breda is receiving "cellular telephone service." Again, it is undisputed that Republic routes certain calls to her telephone

number over cellular networks.[17]  But VZW contends that the VoIP component of Breda's service negates the cellular component for purposes of § 227(b)(1)(A)(iii).  In other words, VZW in effect asks us to read "exclusively" into the "cellular telephone service" provision of § 227(b)(1)(A)(iii) such that it would only cover calls to telephone numbers assigned to an "exclusively cellular telephone service."

We decline to read such a restriction into the statutory language.  To the contrary, because the TCPA is a consumer protection statute, we must interpret it broadly in favor of consumers.  See Zimmerman v. Puccio, 613 F.3d 60, 71 (1st Cir. 2010) ("[C]onsumer protection statutes are construed 'liberally in

---

[17] We reject VZW's contention that this case is like those where courts have declined to hold a caller liable under § 227(b)(1)(A)(iii) because the call was made to a non-cellular telephone number that the called party forwarded to his or her cellphone.  See, e.g., Klein v. Commerce Energy, Inc., 256 F. Supp. 3d 563, 581 (W.D. Pa. 2017); Harper v. Credit Control Servs., Inc., 863 F. Supp. 2d 125, 127 (D. Mass. 2012).  Unlike in those cases, Breda does not unilaterally forward calls received over a landline or through VoIP to her cellphone -- rather, her telephone service provider directs her calls through the internet or through a cellular network.  In other words, her receipt of calls over a cellular network is part of her telephone service.  Accordingly, this is not the type of situation the FCC was contemplating when it stated that "a call placed to a wireline number that is then forwarded, at the subscriber's sole discretion and request, to a wireless number or service, does not violate the ban on autodialed and prerecorded message calls to wireless numbers."  In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 20 FCC Rcd. 3788, ¶ 48 (2005) (emphasis added).

favor of consumers.'" (quoting Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 171 (1st Cir. 2004))). Construing "cellular telephone service" to embrace a hybrid service that routes some calls over cellular networks is consistent with the TCPA's purpose to "ban[] . . . automated or prerecorded telephone calls . . . to protect[] telephone consumers from [] nuisance and privacy invasion." Pub. L. 102-243, § 2, 105 Stat. 2394 (Dec. 20, 1991). Certainly, VZW's calls to Breda's smartphone, transmitted via cellular networks, posed the same type of nuisance and invasion of privacy as do calls transmitted via telephone service lacking a VoIP component. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, ¶ 124 (2015) (recognizing that the intrusion of privacy presented by unwanted calls may be heightened "where the calls are received on a phone that the consumer may carry at all times"). Further, as a matter of common sense, we see no principled reason for treating a service that involves the routing of calls over a cellular network the same as a service that exclusively uses VoIP technology for purposes of determining liability under the "cellular telephone service" provision of the TCPA.

VZW contends that including hybrid services within the meaning of "cellular telephone service" would render superfluous the phrase "or any service for which the called party is charged

for the call" in § 227(b)(1)(A)(iii).  In so arguing, VZW points to Breda's contention that her plan is "like just about every plan on the market" to suggest that a definition of "cellular telephone service" that includes hybrid VoIP and cellular service would "swallow" the charged call provision.  But even if Breda is correct that hybrid VoIP and cellular services are ubiquitous, non-hybrid telephone services relying solely on VoIP technology <u>do</u> exist and could still be analyzed under the TCPA's charged call provision.  <u>See</u>, <u>e.g.</u>, <u>Baemmert</u> v. <u>Credit One Bank, N.A.</u>, 271 F. Supp. 3d 1043, 1046 (W.D. Wis. 2017) ("The TextMe app allowed Baemmert to use his cell phone only when connected by Wi-Fi to the internet.  If someone called Baemmert when he had no internet connection, [his] cell phone would not ring . . . .").  Furthermore, to the extent hybrid services using both cellular networks and VoIP technology are becoming more common, VZW's strict reading of "cellular telephone service" would create a significant rent in the consumer-protective fabric of the TCPA.  We therefore conclude that the district court erred by not considering the cellular aspect of Breda's telephone service and holding as a matter of law that her hybrid service was not "cellular telephone service" under the TCPA.[18]

---

[18] The district court and VZW put misplaced weight on how Bandwidth and Republic characterize themselves.  Bandwidth provides <u>VoIP services</u> to Republic; the fact that Bandwidth does

- 20 -

## B.  "Assigned To"

Consideration of the statutory phrase "assigned to" does not change our analysis.  See 47 U.S.C. § 227(b)(1)(A)(iii) (TCPA liability attaches to calls made to a telephone number "assigned to a . . . cellular telephone service" (emphasis added)).  VZW suggests that the designation of Breda's telephone number on Neustar as a "wireline" number -- as opposed to a "wireless" number -- is synonymous with the "assignment" that triggers TCPA coverage. The district court apparently took the same view, describing the Neustar listing as "the listing of [Breda's] number as having been assigned to a wireline VoIP service."  Breda, 2017 WL 5586661, at *3.  But VZW and the district court place too much emphasis on the Neustar listing.

The record suggests that the designation of Breda's telephone number as "wireline" on Neustar -- which Republic's technical product manager referred to as a "classification" -- was made by

---

not identify itself as a cellular telephone service provider is of negligible import.  And contrary to VZW's contention, Republic never stated that it "is a VOIP provider and does not provide cellular telephone service."  Republic described itself as "provid[ing] telephone service to its customers utilizing its proprietary technology that prefers [VoIP] for the transmission of calls to its customers."  Further, contrary to the district court's conclusion, Breda never "admit[ted]" that "she was receiving VoIP services rather than traditional cellular telephone services." See Breda, 2017 WL 5586661, at *3.  Breda consistently alleged that she was receiving a hybrid VoIP and cellular service that qualified as "cellular telephone service" under the TCPA.

Bandwidth because "numbers that Bandwidth provides or has the ability to provide are wire line numbers." There is no clear evidence in the record, however, that this "classification" by Bandwidth is synonymous with the "assignment" discussed in § 227(b)(1)(A)(iii). In fact, Republic's technical product manager specifically differentiated between the "classification" of Breda's number and any "assignment," explaining that Republic does not "have authority to change the . . . classification of [a] number from wireless to wire line [but] do[es] take that number that is provided to us from Bandwidth and assign it to a[] [customer's] account."

Moreover, taking a broader view, we are unconvinced that "assigned to" has any specific, technical meaning under the TCPA that is determinative in this case. The FCC has simply stated that "a telephone number <u>is assigned to</u> a cellular telephone service, for purposes of the TCPA, if the number <u>is currently being used in connection with that service</u>." <u>In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 20 FCC Rcd. 3788, ¶ 47 (2005) (emphasis added). The FCC's statement suggests that, to determine whether a telephone number is "assigned to a . . . cellular telephone service," we need only consider whether the number is being used in connection with such service. It is evident that the focus of such consideration should be on

- 22 -

Republic, not Bandwidth, because Republic is the entity that provides Breda's telephone service. Breda signed up with Republic's "Wi-Fi + Cell Talk + Text Service Plan"; Republic contracts with Bandwidth and with T-Mobile and Sprint to access VoIP technology and cellular networks, respectively, for its customers' calls; and Republic receives incoming calls to Breda's number and routes them through VoIP or through the cellular networks. Thus, the pertinent question is not how Bandwidth, or any entity, "classifies" Breda's number, but whether her telephone number is in fact "being used in connection with" a "cellular telephone service."

We do not dispute that Bandwidth's classification of Breda's number as "wireline" on Neustar has some meaning. The FCC has recognized Neustar as a resource for information "that can assist telemarketers in identifying numbers assigned to wireless carriers." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, ¶ 170 (2003). But the fact that Neustar is a tool that can assist compliance with the TCPA does not mean that Neustar listings are dispositive as to whether a telephone number is "assigned to a . . . cellular telephone service" under the TCPA. Indeed, to the extent that the only company associated with Breda's telephone number on Neustar is Bandwidth, a VoIP provider, the listing does not provide the

relevant compliance information that Breda's telephone service is with Republic and that it has both VoIP and cellular components. Further, calls to a "wireline" service may violate the TCPA if the "wireline" service falls within § 227(b)(1)(A)(iii)'s catch-all for "any service for which the called party is charged for the call," yet the Neustar listings do not appear to provide any information as to whether a given telephone number is associated with a plan under which the called party is charged for incoming calls.[19]

In sum, on the record before us, we conclude that Breda's telephone number is "assigned to a . . . cellular telephone service" within the meaning of § 227(b)(1)(A)(iii) of the TCPA.[20]

---

[19] In defense of its position that Breda's telephone number is not "assigned to a . . . cellular telephone service," VZW also points to the fact that Republic's service "prefers" VoIP. We understand this simply to mean that Republic will route calls over VoIP if the called party has internet access at the time of the call even if the called party is also in range of the available cellular networks. This "preference," however, does not negate the basic fact that Republic can, and does, route calls both over VoIP and over cellular networks.

[20] In her briefing, Breda heavily relies on an inapposite footnote in a 2015 FCC order. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, footnote 174 (2015). Footnote 174 explains that, for purposes of exercising its statutory exemption authority, the FCC considers "cellular telephone service" to embrace wireless services using spectrum blocks in addition to the "Cellular Service" spectrum block. Id. That is, the footnote suggests that a caller can be confident that an exemption involving "cellular telephone service" applies both to services on the "Cellular Service" spectrum block and to functionally equivalent services on

**V.**

For the foregoing reasons, we affirm the district court's denial of VZW's motion to compel arbitration but reverse the district court's entry of summary judgment in VZW's favor and remand for further proceedings consistent with this opinion.

So ordered.

---

other spectrum blocks. Id. The footnote does not stand for the broad proposition Breda asserts that the nature of a person's telephone service must be assessed from the consumer's perspective, even assuming that the footnote was binding on the district court. See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 139 S. Ct. 2051, 2055-56 (2019) (describing the "preliminary sets of questions" that must be answered before determining that an FCC order is binding on a district court under the Administrative Orders Review Act, 28 U.S.C. § 2342(1)).